Michael MARTINO and McDonald's Drive-In of Manitowoc, Inc., Plaintiffs-Respondents-Petitioners,

v.

McDONALD'S CORPORATION, successor in interest of McDonald's System, Inc., an Illinois corporation, and Franchise Realty Interstate Corporation, an Illinois corporation, Defendants-Appellants.

Supreme Court

No. 80–085. Argued March 2, 1981.—Decided April 29, 1981.

(Also reported in 304 N.W.2d 780.)

For the petitioners there was a brief by *Coughlin, Herrling, Swain & McCanna* and oral argument by *Dennis W. Herrling,* all of Appleton.

For the defendants-appellants there was a brief by *Paul H. Grimstad* and *Nash, Spindler, Dean & Grimstad* of Manitowoc; *Earl E. Pollock, Gary Senner, Louis C. Keiler* and *Sonnenscheim, Carlin, Nath & Rosenthal* of Chicago, Illinois, *Burton D. Cohen* and *Dianne DeGrange,* of counsel, of Oak Brook, Illinois, with oral argument by *Gary Senner* of Chicago.

STEINMETZ, J. The circuit court for Outagamie county (Honorable R. THOMAS CANE) entered summary

judgment in favor of plaintiffs-respondents-petitioners, Michael Martino and McDonald's Drive-In of Manitowoc, Inc. (Martino-McDonald's Drive-In). That court held as a matter of law that McDonald's Corporation, defendant-appellant, had failed to comply with sec. 135.04, Stats., of the Dealership Law.[1] The circuit court also entered a permanent injunction prohibiting McDonald's Corporation from failing to renew or terminating Martino's franchise to operate a restaurant owned by McDonald's Corporation in Manitowoc, Wisconsin, without first meeting the requirements of sec. 135.04.

The court of appeals in an unpublished opinion reversed the trial court. The court of appeals stated the basic issue was the retroactive application of the Wisconsin Fair Dealership Law, specifically sec. 135.04, Stats., and that issue was decided in *Wipperfurth v. U-Haul of Western Wis., Inc.*[2] In *Wipperfurth* as well as in this case the court of appeals held prospective application of ch. 135 only was intended by the legislature and therefore Martino and McDonald's Drive-In of Manitowoc

---

[1] "135.04 **Notice of termination or change in dealership.** Except as provided in this section, a grantor shall provide a dealer at least 90 days' prior written notice of termination, cancellation, nonrenewal or substantial change in competitive circumstances. The notice shall state all the reasons for termination, cancellation, nonrenewal or substantial change in competitive circumstances and shall provide that the dealer has 60 days in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days the notice shall be void. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors or bankruptcy. If the reason for termination, cancellation, nonrenewal or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer shall be entitled to written notice of such default, and shall have 10 days in which to remedy such default from the date of delivery or posting of such notice."

[2] *Wipperfurth v. U-Haul of Western Wis., Inc.*, 98 Wis.2d 516, 297 N.W.2d 65 (Ct. App. 1980).

were not entitled to the notice and good cause protections of that statute.

McDonald's Corporation owns a restaurant in Manitowoc which was constructed in 1959. It was initially franchised to others than Martino for a term of 20 years. In 1962, with McDonald's Corporation consent, the franchise agreement to operate the Manitowoc restaurant was assigned to Michael Martino, his brother Bruno (now deceased) along with Bruno's brother-in-law, Lawrence Gatti.

The franchise agreement was to expire by its own terms on June 1, 1979. It did not contain any provision requiring McDonald's Corporation to afford the franchisee any opportunity to cure previously identified deficiencies before terminating, nor did it contain any requirement for "good cause" for termination.

The Fair Dealership Law was originally enacted in 1973 effective April 5, 1974. The law requires a grantor give a dealer 90 days' notice of the termination or nonrenewal of a contract, that the grantor supply a list of the deficiencies which constitute the reason for ending the relationship and that the grantor give the dealer 60 days in which to cure such deficiencies.[3] Termination or nonrenewal can be done only for good cause, and if the deficiencies are cured within the allotted 60 days, the notice of termination or nonrenewal is void.

In its original form, the chapter contained a clause restricting the provision which requires good cause for termination or nonrenewal to dealership agreements "entered into after April 5, 1974." These words were eliminated from the statute effective November 24, 1977.[4]

---

[3] Sec. 135.04, Stats.

[4] Ch. 171, Laws of 1977, Sec. 1. 135.03 of the statutes was amended to read:

"135.03 **Cancellation and alteration of dealerships.** No grantor, directly or through any officer, agent or employe, may terminate,

McDonald's Corporation did not follow the procedure outlined by the statutes. It did, however, follow the provisions for nonrenewal described in the contract. The only renewal provision of the contract is the clause which promises "first consideration" for a five-year renewal if the grantor finds the licensee to be in "good standing" at the end of the franchise term. On March 4, 1977, the McDonald's Corporation sent a certified letter to the petitioner describing the petitioner's failure to upgrade his equipment and maintain good standards and declaring the company's intention not to renew the franchise on its expiration.[5] On April 26, 1979, another letter again

cancel, fail to renew or substantially change the competitive circumstances of a dealership agreement ~~entered into after April 6, 1974~~ without good cause. The burden of proving good cause ~~shall be~~ *is* on the grantor."

[5] Relevant portions of the March 4, 1977, letter from McDonald's Corporation to Michael Martino state:

". . .

"A review of your operational reports over a long period shows a clear failure to consistently maintain minimum levels of Quality, Service and Cleanliness. A stream of field consultants and regional and district personnel have repeatedly attempted to help you upgrade your operations, but their suggestions have not been implemented. The lack of an effective management team has also adversely affected QSC and, of course, sales. You visit the store infrequently and have totally abrogated your obligation to give clear management direction to your manager and crew. We have repeatedly recommended that you either sell this restaurant or devote the time to its operations necessary to correct the long-standing deficiencies there. Your have chosen not to do this.

"The facility which is an old red and white tile building has been allowed to deteriorate and your refusal to provide adequate maintenance, remodel, add seats or even invest in new equipment has resulted in a sales level which is far short of the potential in the market and an image in the community which is not consistent with the Company's objectives and position with the public . . .

"As a result of your total lack of commitment to maintain the standards upon which McDonald's is based, the rewrite com-

informed the petitioner of the company's intent not to renew and specifically referred petitioner to the lengthy explanation contained in the March 4 letter. It is apparent from these letters that McDonald's decided that Martino was not in good standing and therefor not entitled to a renewal.

This court found in *Wipperfurth v. U-Haul of Western Wis., Inc.,* 101 Wis.2d 586, 304 N.W.2d 767 (1981), the 1977 amendments to ch. 135, Stats., to the extent that they made that chapter retroactive, are unconstitutional.

The retroactive nature of those amendments in the Laws of 1977 was not a constitutional exercise of the state's police power, but rather was beyond a reasonable doubt a violation of the constitutional prohibition against interfering with the obligations of contract.[6]

To force by law the renewal of a contract which was entered into for a limited term before the enactment of ch. 135, Stats., would impair the obligation of contract. Application of the dealership law to the present case would have altered the contractual relationship drastically between parties who were nearing the end of a 20-year relationship. In that contractual period the economics and techniques of the business had altered considerably. The grantor had no anticipation the law controlling the relationship would be severely changed by law at about the same time McDonald's was terminating the grant under the existing contract.

---

mittee has concluded that it would be a disservice to the system to issue a new lease and license agreement when your current agreements expire on June 1, 1979."

[6] The United States Constitution, Art. I, sec. 10, clause 1 provides:

"No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."

It is accordingly the decision of this court that the contract at issue was validly not renewed and expired by its terms on June 1, 1979.

*By the Court.*—The decision of the court of appeals is affirmed.