STATE EX REL. Robert C. CANNON, John A. Decker, Robert M. Curley, Leander J. Foley, Jr., Robert W. Landry, Hugh R. O'Connell and Christ T. Seraphim, relators, and each in his own right, individually, Plaintiffs-Respondents-Petitioners,

v.

J. Denis MORAN, individually and in his official capacity as Director of State Courts, Gary Gates, individually and in his official capacity as Secretary of the Department of Employe Trust Funds; and Kenneth Lindner, individually and as Secretary of the Department of Administration (all of said administrative agencies being of the state of Wisconsin), Defendants-Appellants,

ASSEMBLY COMMITTEE ON ORGANIZATION, Intervenor-Appellant.

Supreme Court

*No. 81–420. Argued February 4, 1983.—Decided March 29, 1983.*

(Also reported in 331 N.W.2d 369.)

For the plaintiffs-petitioners there were briefs and oral argument by *Stewart G. Honeck,* Milwaukee.

For the defendants-appellants there was a brief by *Frank J. Pelisek, Michael E. Husmann* and *Michael, Best & Friedrich,* Milwaukee, and oral argument by *Mr. Pelisek.*

WILLIAM G. CALLOW, J.  This is a review of a decision of the court of appeals[1] which reversed a summary judgment in the plaintiffs' favor ordered by the Dane county circuit court, W.L. Jackman, Reserve Judge.

The issue presented is whether Chapter 38, Laws of 1979, which operates to reduce the plaintiffs'[2] salaries by the amount of pension benefits they receive from prior judicial service in Milwaukee county is unconstitutional.  A brief historical review of the retirement benefits which have been provided to Milwaukee circuit court judges[3] is necessary to develop the facts[4] surrounding this controversy.

---

[1] *State ex rel. Cannon v. Moran,* 107 Wis. 2d 669, 321 N.W.2d 550 (Ct. App. 1982).

[2] It should be noted at the outset that each of the plaintiffs either was or currently is a circuit judge in Milwaukee county.

[3] Prior to the Court Reform Act, Chapter 449, Laws of 1977, there were both circuit and county court judges. The method of

In 1937 the legislature mandated the development of retirement systems in counties with a population of five hundred thousand or more. Chapter 201, Laws of 1937.[5] Pursuant to this law the Milwaukee County Employees' Retirement System (MCERS) was established on January 1, 1938. All persons who were regularly employed by Milwaukee county, except elected officials, were eligible for the MCERS.

On May 14, 1945, the legislature published Chapter 138, Laws of 1945,[6] which provided that employe bene-

providing compensation and retirement benefits to these two classes of judges differed in some respects. Since all of the plaintiffs in the instant case were Milwaukee circuit court judges immediately prior to the Court Reform Act, our historical review is confined to retirement benefits for circuit court judges.

[4] The parties have stipulated to the facts in this case.

[5] Chapter 201, Laws of 1937, Section 1 provided:

"RETIREMENT SYSTEM IN POPULOUS COUNTIES; DEFINITIONS. In each county having a population of five hundred thousand or more a retirement system shall be established and maintained for the payment of benefits to the employes of such county and to the widows and children of such employes, except employes who are contributory to, participants in, or beneficiaries of a pension fund in operation in the state, or any municipal subdivision thereof. The funds of the retirement system shall be derived, administered and disbursed in accordance with the provisions of this act. Except where the context plainly requires a different meaning, the following words and phrases shall have the following meanings: . . . ."

[6] Chapter 138, Laws of 1945, provided in pertinent part:

"Chapter 201, Laws of 1937, section 13a is created to read:

"(Chapter 201, Laws of 1937) Section 13a (1) LEGISLATIVE POLICY. Employes have been attracted to and have remained in the public service in counties of more than 500,000 population despite the prevailing higher wages in other employments because of the deferred compensation for their services promised to them in the form of retirement annuities and death benefits in the retirement system to which they have been admitted as contributing members. The purpose of this act is to strengthen the public service in the most populous counties of the state by establishing the security of such retirement and death benefits.

fits under county retirement systems "shall be assured by benefit contracts." Chapter 138 further provided that "each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent."[7] Also in 1945 eligibility for county retirement systems was expanded enabling state employes who received part of their compensation from Milwaukee county to participate in MCERS. Chapter 77, Laws of 1945, Section 2. Their participation was limited, however, to the extent they were compensated by the county. Chapter 201, Laws of 1937, was further amended by the legislature in 1947 to make elected officials, including circuit court judges, eligible for the MCERS. Chapter 357, Laws of 1947, Sections 1, 4. The

"(2) CONTRACTS TO ASSURE BENEFITS. The benefits of members, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system created by chapter 201, laws of 1937, as amended, shall be assured by benefit contracts as herein provided:

"(a) Every such member and beneficiary shall be deemed to have accepted the provisions of this act and shall thereby have a benefit contract in said retirement system of which he is such member or beneficiary as of the effective date of this act unless, within a period of 30 days thereafter, he files with the board administering the system a written notice electing that this act shall not apply to him. The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided in the law under which the system was established as such law is amended and in effect on the effective date of this act shall be obligations of such benefit contract on the part of the county and of the board administering the system and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent."

[7] This vested contract right to retirement benefits within Chapter 138, Laws of 1945, was reaffirmed by the legislature as amended in Chapter 326, Laws of 1957.

MCERS was funded by employer contributions from Milwaukee County and personal contributions by the circuit court judges.

The Wisconsin Public Employes Retirement System (WPERS) was established in 1943. Chapters 175 and 176, Laws of 1943. On January 1, 1952, Wisconsin circuit court judges became eligible for the WPERS to the extent they received salaries from the state. Chapter 475, Laws of 1951, Sections 1, 3. Circuit court judges were not, however, required to participate in the WPERS until August 17, 1957. Chapter 527, Laws of 1957, Section 1.

Prior to the enactment of the Court Reform Act,[8] which became effective on August 1, 1978, Milwaukee circuit court judges were paid a legislatively fixed sum by the state and a supplemental salary by Milwaukee county. Accordingly, they were eligible to participate in both the WPERS and MCERS to the extent they received compensation from each respective source.

The Court Reform Act converted all county courts to circuit courts and created the court of appeals. Under the Act circuit court judges and court of appeals judges are paid a legislatively authorized salary by the state which is subject to the WPERS. County supplements were abolished effective July 1, 1980, making the state the sole provider of judicial compensation. As a result, Milwaukee circuit court judges and those judges elevated to the court of appeals ceased to be eligible for the MCERS. Instead, their retirement benefits were thereafter provided exclusively by the WPERS.

The Court Reform Act, however, provided an exception for Milwaukee circuit court judges who held office on July 31, 1978, and would continue to serve in that capacity. Those judges could elect to continue receiving a portion of their salary from the state and the balance

[8] Chapter 449, Laws of 1977.

from Milwaukee county. Judges making this election would participate in the MCERS to the same extent as they had prior to August 1, 1978. Under the Court Reform Act the state must reimburse Milwaukee county for its expenditures for compensation and employer contributions to the MCERS.[9]

The legislature required the circuit court judges to exercise their option to remain under the MCERS on or before November 1, 1978. The election which was irrevocable became effective on August 1, 1978. Chapter 449, Laws of 1977, sec. 309(5) [sec. 753.07(5), Stats.].

On July 31, 1978, there were nineteen (19) circuit court judges for Milwaukee county. One of those judges

---

[9] This exception and the provisions for reimbursement by the state are set forth in sec. 753.07(2), Stats., which provides:

"COURT PERSONNEL; MILWAUKEE COUNTY. Persons serving as circuit court judges and circuit court reporters for Milwaukee county on July 31, 1978, shall have the option of receiving compensation and continuing as participants in the retirement system established under chapter 201, laws of 1937, as follows:

"(a) The persons shall continue to receive salaries directly payable from the state in the same amount as they were receiving on July 31, 1978, and such salaries are subject to s. 40.05. The balance of the salaries authorized under ss. 230.12 and 751.02 for the judges and reporters shall be paid by the state treasurer to the county treasurer pursuant to a voucher submitted by the clerk of circuit court to the director of state courts. The county treasurer shall pay the amounts directly to the judges and reporters and the amounts paid are subject to the retirement system established under chapter 201, laws of 1937.

"(b) The state shall pay to the county treasurer in the manner specified in par. (a) on behalf of the judges and reporters the required employer contribution rate as provided under s. 40.05. If the required employer contribution rate under the retirement system established under chapter 201, laws of 1937, is greater than the required employer contribution rate under s. 40.05, the state shall pay 50% of the difference to the county treasurer. For future retirement benefits, these judges and reporters shall be given the same consideration as other elected county officials and county employes under the county's retirement system."

assumed office as justice of the supreme court of Wisconsin. Three other judges, two of whom are plaintiffs in this action, became judges of the Wisconsin court of appeals. These four judges could no longer receive compensation from Milwaukee county and, therefore, did not have the option to participate in the MCERS. Of the remaining fifteen (15) circuit court judges, nine (9) elected to remain under the MCERS. The other six, five of whom are plaintiffs in the instant case, chose not to continue as participants in the MCERS.

As a result of the termination of their membership in the MCERS, the plaintiffs became eligible to receive immediate pension benefits from that system. Of the seven plaintiffs, three satisfied the requirements for normal retirement, three satisfied the requirements for both deferred vested retirement and early retirement, and one satisfied the requirements for deferred vested retirement and had the option of withdrawing his membership account balance in one lump sum. Pursuant to the terms of their retirement benefit contracts, each of the plaintiffs elected to begin receiving a pension from the MCERS.

Subsequently, the legislature enacted Chapter 38, Laws of 1979, for the following purpose:

"SECTION 1. **Legislative purpose.** The legislature finds that the payment of retirement benefits to public employes by Wisconsin public employe retirement systems results in a fortuitous, unseemly and unintended large increase in the effective rate of compensation the public employes receive for their service to the public. This occurrence imposes unintended costs upon the Wisconsin public employe retirement systems, discriminates against and discourages public employes performing comparable service, results in the unnecessary expenditures by public employer for employment compensation, stimulates inappropriate and spurious transfer and loss of experienced public employes and undermines the confidence of the public in their civil servants. The purpose

of this act is to reduce the costs imposed upon the Wisconsin public employe retirement systems and the public employers, to restore equity of compensation among public employes, to remove the incentive for inappropriate transfers between public employers and to restore public confidence in civil servants by discouraging and ameliorating the practice of public employes accepting retirement benefits paid by Wisconsin public employe retirement systems while receiving an adequate salary."

Chapter 38 created sec. 40.91, Stats., 1979–80, which provides in pertinent part:

"**Wages reduced to offset retirement benefit.** (1) Notwithstanding any other law, an employe who is occupying a position for which the rate of pay per month is over the dollar base and who also receives retirement benefits shall have his or her gross monthly pay reduced, but not below the dollar base, by the lesser of:

"(a) The amount of the gross monthly retirement benefits the employe receives; or

"(b) The amount determined by dividing the product of the gross monthly pay which is in excess of the dollar base times the monthly retirement benefit by the dollar base.

"(2) For the purpose of sub. (1), the dollar base is $1,667 from November 1, 1979 through December 31 of the 2nd calendar year commencing after November 1, 1979. The department shall establish the dollar base for each subsequent calendar year by multiplying the dollar base for the previous calendar year by the percentage increase in the average of all earnings paid during the preceding calendar year over the average of all earnings paid in the next preceding calendar year to participants of the Wisconsin retirement fund who were participating employes throughout both preceding calendar years."

Sec. 40.91 operates to reduce the plaintiffs' salaries by the amount of retirement benefits they receive from the MCERS.

In January of 1980 the plaintiffs commenced an action in Dane county circuit court challenging the constitu-

tionality of Chapter 38, Laws of 1979. Both the plaintiffs and the defendants moved for summary judgment. The circuit court held that Chapter 38, Laws of 1979, was invalid as to the plaintiffs because it unconstitutionally impaired their retirement benefit contracts and deprived them of property without due process of law. Accordingly, the court entered a final judgment granting plaintiffs' motion for summary judgment.

The defendants appealed. The court of appeals reversed the judgment of the circuit court, finding that the plaintiffs had not shown that Chapter 38, Laws of 1979, violated either the United States Constitution or the Wisconsin Constitution. We granted the plaintiffs' petition for review.

The plaintiffs challenge Chapter 38, Laws of 1979, on several grounds. They claim it violates the contract clauses of the state and federal constitutions, deprives them of property without due process of law, denies them equal protection of the law, and violates Article IV, Section 26[10] of the Wisconsin Constitution. All laws are

---

[10] Article IV, Section 26 of the Wisconsin Constitution provides:

"**Extra compensation; salary change.** SECTION 26. [*As amended April 1956, April 1967, April 1974 and April 1977*] The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into; nor shall the compensation of any public officer be increased or diminished during his term of office except that when any increase or decrease provided by the legislature in the compensation of the justices of the supreme court or judges of any court of record shall become effective as to any such justice or judge, it shall be effective from such date as to each of such justices or judges. This section shall not apply to increased benefits for persons who have been or shall be granted benefits of any kind under a retirement system when such increased benefits are provided by a legislative act passed on a call of ayes and noes by a three-fourths vote of all the members elected to both houses of the legislature, which act shall provide for sufficient state funds to cover the costs of the increased benefits."

presumed to be constitutional. In order to overcome this presumption, the plaintiffs must prove that Chapter 38, Laws of 1979, is unconstitutional beyond a reasonable doubt. *In The Matter of E.B. v. State of Wisconsin,* 111 Wis. 2d 175, 180, 330 N.W.2d 584, 587 (1983).

Both the federal and state constitutions prohibit the state from enacting laws which impair the obligation of contracts.[11] Article I, Section 10, of the United States Constitution provides in part:

> "No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."

Article I, Section 12 of the Wisconsin Constitution similarly provides:

> "**Attainder; ex post facto; contracts.** Section 12. No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed, and no conviction shall work corruption of blood or forfeiture of estate."

The constitutional proscription against impairment of the obligation of contract is not absolute. *State ex rel. Building Owners v. Adamany,* 64 Wis. 2d 280, 292, 219

---

[11] For an historical review of the contract clause leading up to its current status under *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234 (1978); see Note, *The Contract Clause: A Constitutional Basis For Invalidating State Legislation,* 12 Loy. L.A. L. Rev. 927–66 (1979); Note, *The Contract Clause: Revived or Revised?,* 33 U. Miami L. Rev. 667–80 (1979); Note, *The Contract Clause: The Use of a Strict Standard of Review for State Legislation That Impairs Private Contracts—Allied Structural Steel Co. v. Spannaus,* 28 De Paul L. Rev. 503–22 (1979).

N.W.2d 274 (1974); *Home Building & Loan Assn. v. Blaisdell,* 290 U.S. 398, 428 (1934). Courts have long recognized that under the contract clause a contract includes the laws existing at the time it was made. Thus, the scope of the clause is limited to legislation which retrospectively impairs the obligations of contract. *Id.* at 429–30; *Ogden v. Saunders,* 25 U.S. (12 Wheat.) 213, 303 (1827). Furthermore, the contract clause cannot be read literally to proscribe any impairment of preexisting contracts. "[L]iteralism in the construction of the contract clause . . . would make it destructive of the public interest by depriving the State of its prerogative of self-protection." *W.B. Worthen Co. v. Thomas,* 292 U.S. 426, 433 (1934). Under certain circumstances the obligation of contract may be "obliged to yield to the compelling interest of the public—the exercise of the police power." *State ex rel. Building Owners v. Adamany,* 64 Wis. 2d at 292.

It is undisputed that the plaintiffs have a valid contract with the MCERS. In 1945 the legislature required county retirement systems to assure retirement benefits by contract. Chapter 38, Laws of 1945, *supra* note 6, at 3. Moreover, the defendants concede that, pursuant to the MCERS contract, the plaintiffs are properly entitled to receive retirement benefits. The only question is whether Chapter 38, Laws of 1979, unconstitutionally impairs this obligation of contract.

The first step in analyzing a contract clause problem is to determine whether an obligation of contract has been impaired. In *Home Building & Loan Assn. v. Blaisdell,* 290 U.S. at 431, the court held:

"The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them (*Sturges v. Crowninshield, supra,* pp. 197, 198) and impairment, as above noted, has been predicated of

laws which without destroying contracts derogate from substantial contractual rights." (Footnote omitted.)

In a recent case the United States Supreme Court indicated that legislation which alters the contractual expectations of the parties impairs the obligation of contract. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245-46 (1978). This court has recognized that a contract is impaired when the consideration agreed upon is altered by legislation. *State ex. rel. Building Owners v. Adamany*, 64 Wis. 2d at 291; *Paylowski v. Eskofski*, 209 Wis. 189, 193, 244 N.W. 611 (1932).

In the instant case Chapter 38, Laws of 1979, operates to reduce the plaintiffs' salaries by the amount of pension benefits they receive from the MCERS. The plaintiffs continue to receive pensions pursuant to their MCERS contracts. The defendants argue, and the court of appeals held, that since Chapter 38 did not reduce or eliminate the plaintiffs' pension benefits, the obligations of their MCERS contracts were not impaired. We disagree. The distinction drawn by the defendants and the court of appeals between a deprivation of pension benefits and a reduction in salary by the same amount is illusory.

The seventh circuit court of appeals was recently presented with a similar problem in *Raskin v. Moran*, 684 F.2d 472 (7th Cir. 1982). That case involved a constitutional challenge to a Wisconsin statute which worked to reduce the salary of certain reserve judges by the amount of federal social security benefits they received. Under sec. 203(f)(3) of the Social Security Act,[12] these judges

[12] Sec. 203(f)(3) of the Social Security Act [42 U.S.C.A. sec. 403(f)(3) (West Supp. 1981)] provides:

"(3) For purposes of paragraph (1) and subsection (h) of this section, an individual's excess earnings for a taxable year shall be 50 per centum of his earnings for such year in excess of the prod-

were entitled to social security benefits without a reduction based on earned income. The seventh circuit found that the statute had the effect of reducing the judges' social security benefits contrary to sec. 203(f)(3) and thereby violated the supremacy clause of the federal constitution. In reaching this conclusion, the court stated:

"Although not *directly* preventing or impeding plaintiffs' receipt of social security benefits, Wisconsin effectively deprives the recipient of those federal benefits by reducing plaintiffs' salaries in an amount precisely equal to the federal benefits. Indeed, we would put form over substance if we held that only direct efforts to reduce, divert or eliminate social security benefits were in conflict with section 203(f)(d). . . . Here, by the indirect method of setoff, which as a matter of elementary arithmetic penalizes in the exact amount of his social security payments the social security recipient who both works and lawfully receives benefits, there is an inescapable conflict with section 203(f)(3) of the SSA. The federal policy of paying persons over age 70 their full social security benefit is effectively thwarted by this state salary deduction scheme. Moreover, the interference with federal policy here is not merely an incidental effect of the state statute. While pleading its concern with 'double dipping,' Wisconsin must concede that it is directly regulating judicial salaries based upon, *inter alia*, the receipt of federal benefits." *Id.* at 477–78 (footnotes omitted). (Emphasis in original.)

The court further stated:

uct of the applicable exempt amount as determined under paragraph (8), multiplied by the number of months in such year, except that, in determining an individual's excess earnings for the taxable year in which he attains age 70, there shall be excluded any earnings of such individual for the month in which he attains such age and any subsequent month (with any net earnings or net loss from self-employment in such year being prorated in an equitable manner under regulations of the Secretary). The excess earnings as derived under the preceding sentence, if not a multiple of $1, shall be reduced to the next lower multiple of $1."

"Surely the protections of the federal statute are thwarted when the federal government puts money in the plaintiffs' left pocket while Wisconsin takes a precisely equal amount of money from their right pocket *solely* because the money was received through the social security program." *Id.* at 479–80. (Emphasis in original.)

This same reasoning is analogously applicable to the instant case. Just as the Wisconsin statute in *Raskin* thwarted sec. 203(f)(3) of the SSA, Chapter 38 impairs the obligations of the MCERS contracts. To say that Chapter 38 merely reduces salaries, not retirement benefits, and therefore does not impair the MCERS contracts is to ignore the real effect of the law. The plaintiffs are paid a salary for their judicial services and, in addition, properly qualify for a pension pursuant to their MCERS contracts.[13] By reducing salaries in an amount equal to pensions received, Chapter 38 places the plaintiffs in the same position as those judges not entitled to retirement benefits. Thus Chapter 38 effectively, albeit indirectly, deprives the plaintiffs of the benefits properly due them under their MCERS contracts. We would be putting form over substance if we held that only a direct reduction in pension benefits constitutes an impairment. Accordingly, we conclude that the obligations of the plaintiffs' MCERS contracts are impaired by the salary setoff device of Chapter 38, Laws of 1979.

We next turn to the question of whether this impairment of the obligation of contract is unconstitutional.

---

[13] The practice of receiving both a salary and pension at the same time is sometimes referred to as double-dipping. We, however, agree with the court of appeals that " '[d]ouble-dipping' is an unfortunate misnomer when applied to retirees, such as plaintiffs, who are paid deferred compensation for past services and a salary for current services to the public. Plaintiffs and similar retirees receive two government checks, but they are not paid twice for the same services." *State ex rel. Cannon v. Moran,* 107 Wis. 2d 669, 675 n. 3, 321 N.W.2d 550 (Ct. App 1982).

The degree of impairment determines the level of scrutiny to which the legislation in question will be subjected. In *Allied Structural Steel Co. v. Spannaus*, 438 U.S. at 244–45, the court stated:

"[T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." (Footnotes omitted.)

In finding that an impairment was severe, the *Spannaus* court relied upon those "factors that reflect the high value the Framers placed on the protection of private contracts." *Id.* at 245. In particular, the court noted that the legislation in question nullified an express term of the contract which was bargained for and reasonably relied upon by the parties, resulting in a completely unexpected liability to the plaintiff.

By the same standards we deem the impairment in the instant case to be severe. The plaintiffs' MCERS contracts expressly entitled them to a certain amount of pension benefits. The salary setoff provision of Chapter 38, Laws of 1979, nullified this contractual obligation. Furthermore, the plaintiffs reasonably relied upon the contract terms regarding pension benefits. The MCERS was created in response to a 1937 legislative mandate. The legislature in 1947 made Milwaukee circuit court judges eligible for the MCERS. In 1977 the legislature enacted the Court Reform Act which gave Milwaukee circuit court judges the option of continuing under the MCERS as before or converting to the WPERS. This decision was irrevocable. Pursuant to this legislative mandate, the plaintiffs chose to terminate their member-

ship in the MCERS. This action entitled them to pension benefits under their MCERS contracts. Thus the legislature actually authorized the plaintiffs to participate in the MCERS in the first instance and, later, to make the decision which would qualify them for the pension benefits at issue in this case. It is understandable that the plaintiffs would rely upon the legislature's actions in making this very important decision regarding their retirement plan. Less than two years after requiring the plaintiffs to make this decision, the legislature "pulled the rug out" from under them by enacting Chapter 38, Laws of 1979. This law reduced the plaintiffs' salaries in the amount of their pensions and thereby caused them a completely unexpected and substantial loss. For these reasons we conclude that the impairment in the instant case was severe, and therefore Chapter 38 is subject to a high level of scrutiny.

As noted earlier, the contract clause does not proscribe every impairment of contract. A state may be entitled to exercise its police power for the general welfare of the public even though a private contract is impaired. *Wipperfurth v. U-Haul Co. of Western Wis., Inc.*, 101 Wis. 2d 586, 592, 304 N.W.2d 767 (1981). "If the Contract Clause is to retain any meaning at all, however, it must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. at 242. (Emphasis in original.)

In *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. at 434, the United States Supreme Court upheld a Minnesota mortgage moratorium statute which was designed to reduce the number of foreclosures during the economic depression of the 1930's. This statute impaired the contract rights of lenders. Nevertheless, the court balanced

the language of the contract clause against the purpose of the statute and held that the state had authority "to safeguard the vital interests of its people" through such legislation. In reaching this conclusion, the court found five factors to be significant. In *Allied Structural Steel Co. v. Spannaus,* 438 U.S. at 242 (citations omitted), the court succinctly set forth these five factors as follows:

"First, the state legislature had declared in the Act itself that an emergency need for the protection of homeowners existed. Second, the state law was enacted to protect a basic societal interest, not a favored group. Third, the relief was appropriately tailored to the emergency that it was designed to meet. Fourth, the imposed conditions were reasonable. And, finally, the legislation was limited to the duration of the emergency."

*Blaisdell* indicates that to survive the contract clause a statute which impairs contracts must have a significant and legitimate public purpose, "such as the remedying of a broad and general social or economic problem." *Energy Reserves Group, Inc. v. Kansas Power and Light Co.,* 51 U.S.L.W. 4106, 4109 (U.S. Jan. 25, 1983) (No. 81–1370); *State ex rel. Building Owners v. Adamany,* 64 Wis. 2d at 303. Since *Blaisdell,* however, the standard has been modified so that the public purpose need no longer involve an emergency or temporary situation. *Energy Reserves Group, Inc. v. Kansas Power and Light Co., supra* at 4109. The express purpose of Chapter 38, Laws of 1979, is to "reduce the costs imposed upon the Wisconsin public employe retirement systems and the public employers, to restore equity of compensation among public employes, to remove the incentive for inappropriate transfers between public employers and to restore public confidence in civil servants by discouraging and ameliorating the practice of public employes accepting retirement benefits paid by Wisconsin public employe retirement systems while receiving an adequate salary." Be-

cause at least some of these objectives constitute broad societal interests, we deem the purpose of Chapter 38 to be of sufficient magnitude to warrant further examination.

Once a legitimate public purpose is identified, the final inquiry is whether the statute is reasonable and of "a character appropriate to the public purpose justifying its adoption." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977); *Energy Reserves Group, Inc. v. Kansas Power and Light Co., supra* at 4109; *State ex rel. Building Owners v. Adamany*, 64 Wis. 2d at 293. We conclude that Chapter 38 does not—as retroactively applied to the plaintiffs—reasonably or appropriately safeguard a vital interest of the people.

The conditions imposed by Chapter 38, Laws of 1979, are unreasonable for the same reasons they severely impair the obligations of the MCERS contracts. The legislature required two of the plaintiffs and authorized the other five to terminate their membership in the MCERS and thereby to become eligible for retirement benefits. In reliance on this legislative action, the plaintiffs elected to receive the pension benefits to which they were properly entitled under their MCERS contracts. Less than two years later, the legislature, without warning, deprived the plaintiffs of these benefits by mandating a salary setoff in Chapter 38. All of the plaintiffs suffer a completely unexpected, yet substantial, loss of benefits for as long as they continue to work and receive a salary. As to some of the plaintiffs, however, this loss is not of limited duration. The plaintiffs who qualified only for early retirement accepted a permanent reduction in benefits (pursuant to their MCERS contracts) in order to begin receiving a pension.

Furthermore, the salary setoff of Chapter 38, Laws of 1979, is inherently inequitable. The MCERS was funded both by Milwaukee county employers' contributions and

the employees' personal contributions. Thus the plaintiffs' salaries are being reduced by retirement benefits consisting partially of monies they contributed to the MCERS. It follows that under Chapter 38 the plaintiffs are in effect paying a portion of their own salaries.

Finally, Chapter 38, Laws of 1979, has an extremely narrow focus. By its terms Chapter 38 applies only to state employes who are paid a salary exceeding the legislatively determined dollar base and who, at the same time, receive retirement benefits. Because the salary setoff eliminates any advantage government employes could presently gain from retirement benefits, it is unlikely that any will elect to receive them until after they stop working. Accordingly, the effect of Chapter 38 is limited for the most part to those employes, such as the plaintiffs, who elected, pursuant to the choice given them by the legislature, to receive pension benefits prior to the enactment of Chapter 38. Because this class is very small,[14] the retroactive application of Chapter 38 will do little to protect the broad societal interests articulated in the legislative purpose. The marginal protection offered by Chapter 38, coupled with its severe impairment of the plaintiffs' MCERS contracts, indicates that it is neither reasonable nor of a character appropriate to the public purpose it was designed to meet. *See Wipperfurth v. U-Haul Co. of Western Wis., Inc.*, 101 Wis. 2d at 598; *Martino v. McDonald's Corp.*, 101 Wis. 2d 612, 616, 304 N.W.2d 780 (1981).

---

[14] The narrow class affected by the retroactive application of Chapter 38, Laws of 1979, suggests possible equal protection problems. Furthermore, the disparity of judicial salaries caused by Chapter 38 appears contrary to Article IV, Section 26 of the Wisconsin Constitution. Because we find that Chapter 38 violates the contract clause of the United States and Wisconsin Constitutions, we do not reach these questions or the other constitutional issues raised by the plaintiffs.

We conclude that Chapter 38, Laws of 1979, as retroactively applied, is invalid under the contract clause of the United States and Wisconsin Constitutions.

*By the Court.*—The decision of the court of appeals is reversed.