THOMAS LOFTUS, Chairperson Assembly Committee on Organization
You have asked for my opinion regarding proposed legislation[1]
which would amend section 71.03 (2)(d), Stats. That subsection presently exempts certain pension payments from state income taxation. Included are:
 All payments received from the employe's retirement system of the city of Milwaukee, Milwaukee county employes' retirement system, sheriff's annuity and benefit fund of Milwaukee county, police officer's annuity and benefit fund of Milwaukee, fire fighter's annuity and benefit fund of Milwaukee, or the public employe trust fund as successor to the Milwaukee public school teachers' annuity and retirement fund and to the Wisconsin state teachers retirement system, which are paid on the account of any person who was a member of the paying or predecessor system or fund as of December 31, 1963, or was retired from any of the systems or funds as of December 31, 1963.
See. 71.03 (2)(d), Stats.
Specifically, the issue is whether the amendment of section71.03 (2)(d) would violate the "contract clause" which is found in article I, section 10, clause 1 of our federal constitution; "no state shall . . . pass any . . . law impairing the obligation of contracts . . . ." and in article 1, section 12 of our state constitution: "No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts shall ever be passed." At the outset, it is important to realize that these constitutional provisions do not absolutely proscribe the passage of laws which impair the obligation of contracts. This principle was discussed by our supreme court in State ex rel. Cannon v.Moran, 111 Wis.2d 544, 554, 331 N.W.2d 369 (1983):
 Courts have long recognized that under the contract clause a contract includes the laws existing at the time it was made. Thus, the scope of the clause is limited to legislation which retrospectively impairs the obligations of contract. Id. at 429-30, [Home *Page 102 Building and Loan Ass'n v. Blaisdell, 290 U.S. 398
(1934)]; Ogden v. Saunders 25 U.S. (12 Wheat.) 213, 303 (1827). Furthermore, the contract clause cannot be read literally to proscribe any impairment of preexisting contracts. "[L]iteralism in the construction of the contract clause . . . would make it destructive of the public interest by depriving the State of its prerogative of self-protection." W.B. Worthen Co. v. Thomas, 292 U.S. 426, 433 (1934). Under certain circumstances the obligation of contract may be "obliged to yield to the compelling interest of the public — the exercise of the police power." State ex rel. Building Owners v. Adamany, 64 Wis.2d at 29'.
In Cannon, the supreme court began its analysis by determining whether or not an obligation of contract had been impaired. Before I begin a similar undertaking herein, I must first determine whether or not contracts existed between the persons and the governmental units named in section 71.03 (2)(d). It is important to note that we are concerned with a closed set of persons — each of whom began his employment with his respective governmental unit on or before December 31, 1963. Any person employed after that date by any of those governmental units clearly will not be entitled to the tax exemption. This closed set is divided into two subsets — those pre-1964 employes who retired on or before March 8, 1984, and those pre-1964 employes who are still working and are members of the Wisconsin retirement system or any of the plans referred to in section 71.03 (2)(d).
The Wisconsin Legislature mandated the development of a retirement system in Milwaukee County in chapter 201, Laws of 1937. Section 1 thereof provided: "In each county having a population of five hundred thousand or more a retirement system shall be established and maintained for the payment of benefits to the employes of such county and to the widows and children of such employes . . . ." Section 11 thereof provided: "All moneys and assets of the retirement system and all benefits and allowances, and every portion thereof, both before and after payment to any beneficiary, granted under the retirement system shall be exempt from any state, county or municipal tax . . . ."
Accordingly, Milwaukee County established a retirement system on January 1, 1938. The benefits payable thereunder were deemed payable pursuant to contract by virtue of chapter 138, Laws of 1945, effective May 15, 1945. Section (2) thereof provides in part: *Page 103 
 The benefits of members, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system created by chapter 201, laws of 1937, as amended, shall be assured by benefit contracts as herein provided:
 (a) Every such member and beneficiary shall be deemed to have accepted the provisions of this act and shall thereby have a benefit contract in said retirement system of which he is such member or beneficiary as of the effective date of this act . . . .
 . . . each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.
A retirement system for sheriffs of Milwaukee County was created by chapter 155, Laws of 1937, effective January 1, 1938. Coverage extended to members of the shrievalty whose rank was at least deputy sheriff or an equal classification. Chapter 487, Laws of 1955, effective August 3, 1955, amended section 59.130, as created by chapter 155, Laws of 1937, to provide an income tax exemption for annuities and benefits paid to any annuitant or beneficiary. This system was closed and limited to its August 1, 1947, membership by chapter 357, section 25, Laws of 1947.
The City of Milwaukee received a mandate from the Legislature in chapter 134, Laws of 1937, effective May 15, 1937. Section 1 thereof provided:
 In all cities of the first class in this state, whether organized under general or special charter, annuity and benefit funds shall be created, established, maintained and administered (by such city) for all officers and employes of such cities, who at the time this section shall come into effect are not contributors, participants or beneficiaries in any pension fund now in operation in such city by authority of law . . . .
Two pension funds of concern herein were then in operation in 1937: the Policemen's Annuity Benefit Fund of Milwaukee. established by chapter 589, Laws of 1921, and the Firemen's Annuity and Benefit Fund of Milwaukee, established by chapter 423, Laws of 1923. *Page 104 
The provisions of chapter 134, Laws of 1937, were greatly expanded two months after passage by chapter 396, Laws of 1937, effective July 16, 1937, which set forth comprehensive details as to the administration of the retirement system.
Section 1 thereof provided:
 In each city of the first class a retirement system shall be established and maintained by such city for the payment of benefits to the employes of such city and to the widows and children of such employes, except employes who are or who become contributors to, participants in, or beneficiaries of any other pension, annuity or retirement fund in operation in the state by provision of law enacted by the legislature or by any municipality of this state.
Section 11 of chapter 396, Laws of 1937, provided:
 All moneys and assets of the retirement system and all benefits and allowances, and every portion thereof, both before and after payment to any beneficiary, granted under the retirement system shall be exempt from any state, county or municipal tax.
The Policemen's and Firemen's Annuity and Benefit Funds were closed to new members by sections 32 and 33, chapter 441, Laws of 1947, effective July 30, 1947. Subsequent Milwaukee police and firemen came under the retirement system created by chapter 396. Laws of 1937. The present and future annuities and benefits accruing to Milwaukee policemen on July 30, 1947 were assured contract status by section 20, chapter 439, Laws of 1947, which created new section 67 of chapter 589, Laws of 1921 subsection (b) of which provided:
 The annuities and all other benefits in the amounts and on the terms and conditions and in all other respects as provided in chapter 589, laws of 1921, as amended and then in effect in such city shall be obligations of such benefit contract on the part of the city and the retirement board and each policeman and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation nor by any other means without his consent.
Milwaukee firemen received identical treatment and contract status from section 19, chapter 440, Laws of 1947, which created new *Page 105 
section 67 of chapter 423, Laws of 1923. Subsection (b) thereof used the same language as section 67 (b) of chapter 589, Laws of 1921, differing only in the references to the creating law and to policemen.
Section 30 of chapter 441, Laws of 1947, strengthened the Milwaukee retirement system then in effect by creating a new section 14 of chapter 396, Laws of 1937. Subsection 2 of the newly-created section 14 provided:
 The benefits of members, whether employes in service or retired as beneficiaries, and of beneficiaries of deceased members in the retirement system created by chapter 396, laws of 1937, as amended, shall be assured by benefit contracts as herein provided:
 (a) Every such member and beneficiary shall be deemed to have accepted the provisions of this act and shall thereby have a benefit contract in said retirement system of which he is such member or beneficiary as of the effective date of this act unless, within a period of 30 days thereafter, he files with the board administering the system a written notice electing that this act shall not apply to him. The annuities and all other benefits in the amounts and upon the terms and conditions and in all other respects as provided in the law under which the system was established as such law is amended and in effect on the effective date of this act shall be obligations or such benefit contract on the part of the city and of the board administering the system and each member and beneficiary having such a benefit contract shall have a vested right to such annuities and other benefits and they shall not be diminished or impaired by subsequent legislation or by any other means without his consent.
Chapter 459, Laws of 1921, established a state retirement system to provide retirement benefits for public school, normal school and university teachers. This system replaced an earlier system established in 1911 which was insolvent. State Teacher'sRetirement Board v. Giessel, 12 Wis.2d 5, 8, 106 N.W.2d 301
(1960). Section 42.52, as created by section 3, chapter 459, Laws of 1921, provided: "The benefits payable to, or other right and interest of any member, beneficiary, or distributee of any estate under any provision of the state retirement law shall be exempt from any tax levied by the state or any subdivision thereof, . . . ." Although the Legislature didn't *Page 106 
characterize the interests of participants and beneficiaries as contractual, the supreme court did in Giessel, 12 Wis.2d at 9:
 The nature of the state teachers' retirement system and the rights of the members thereof have been the subject of four prior decisions of this court: State ex rel. Dudgeon v. Levitan (1923), 181 Wis. 326, 193 N.W. 499; State ex rel. O'Neil v. Blied (1925), 188 Wis. 442, 206 N.W. 213; State ex rel. Stafford v. State Annuity Investment Board (1935), 219 Wis. 31, 261 N.W. 718; State ex rel. Thomson v. Giessel (1952), 262 Wis. 51, 53 N.W.2d 726. The result of these decisions is that the teachers have a contractual relationship with the state and a vested right in the state teachers' retirement system.
Milwaukee teachers were given a retirement system in 1907 by chapter 453, Laws of 1907, which created section 925-xx, Stats. (1907). That section was repealed and recreated by chapter 510, Laws of 1909, effective June 22, 1909.
An income tax exemption was provided in 1929 by the enactment of chapter 266, section 3, Laws of 1929.
 Subsection (17) of section 42.55[2] of the statutes is amended to read: (42.55) (17) All annuities granted under the provisions of this section shall be exempt from taxation, and from execution, attachment and garnishment process, and no annuitant shall have the right to transfer or assign his annuity.
While I was unable to locate a specific legislative declaration that a member's rights under this retirement system were based on or assured by a benefit contract, it is clear to me that the Legislature understood that contractual rights were involved when it passed section 6, chapter 78, Laws of 1957, creating section38.24 (3)(L):[3]
 Nature of contractual rights unchanged. It is not intended that the enactment of this act (chapter [78], Laws of 1957), shall extend or impair the nature of any contractual rights of members of the retirement fund.
Finally, I am unable to locate the session laws granting an exemption from income taxation for benefits payable from the Milwaukee *Page 107 
annuity and benefit funds for police and firefighters. These funds were closed to new members on July 30, 1947 as I earlier stated herein. Their tax exemption was preserved, however, by the language of section 4, chapter 267, Laws of 1963, which preserved the exemption for members who had retired from such systems as of December 31, 1963.
I conclude that a person who retired from any of the retirement systems referred to in section 71.03 (2)(d) as of December 31, 1963, is a party to a contract between that person and the governmental units referred to in that subsection. Further, any person who, on December 31, 1963, was then a member of any of the retirement systems referred to and who had retired on or before March 8, 1984, is a party to a contract between themself and the governmental units referred to. The contractual rights of the individuals just previously described will not be impaired in any way by section 1276 (m) of Assembly Amendment 1 to 1985 Assembly Bill 85.
Finally as to the remaining subset, these persons who, on December 31, 1963, were then members of the retirement systems referred to and who, on March 9, 1984, were still members of said retirement system or its successor, it is my opinion they, too, are parties to contracts between themselves and the governmental units referred to. The question now becomes whether or not these contracts will be impaired by the proposed legislation.
Our supreme court discussed the law regarding impairment inCannon, 111 Wis.2d at 554-55.
 The first step in analyzing a contract clause problem is to determine whether an obligation of contract has been impaired. In Home Building Loan Assn. v. Blaisdell, 290 U.S. at 431, the court held:
 "The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them (Sturges v. Crowninshield, supra, pp. 197, 198) and impairment, as above noted, has been predicated of laws which without destroying contracts derogate from substantial contractual rights." (Footnote omitted.)
 In a recent case the United States Supreme Court indicated that legislation which alters the contractual expectations of the parties impairs the obligation of contract. Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 245-46 (1978). This court has recognized *Page 108 
that a contract is impaired when the consideration agreed upon is altered by legislation. State ex rel. Building Owners v. Adamany, 64 Wis.2d at 291; Paylowski v. Eskofski 209 Wis. 189, 193, 244 N.W. 611 (1932).
 Cannon, involved a legislative attempt to reduce the salaries of certain Milwaukee County judges by the amount of pension benefits each received from prior judicial service in Milwaukee County. Prior to August 1, 1978, Milwaukee County circuit judges received compensation from both the state and Milwaukee County. Thus, each was eligible to participate in the Milwaukee County Employes Retirement System and the Wisconsin Public Employes Retirement System to the extent of compensation received from each.
Pursuant to the Court Reform Act, chapter 449, Laws of 1977, county supplements to judicial pay were abolished as of July 1, 1980. The state thus became the sole provider of judicial compensation. However, there was an exception for Milwaukee County circuit judges who held office on July 31, 1978, and who would continue to serve in that capacity. Those judges could elect to continue receiving their salary from both the state and Milwaukee County.
Six Milwaukee County circuit judges (five of whom are plaintiffs) chose not to participate in the dual system and thus terminated their membership in the Milwaukee County system. Two circuit judges became appellate court judges and did not have the option of dual system membership. Each of the plaintiffs elected to begin receiving a pension from the Milwaukee County Employes Retirement System.
Subsequently, the Legislature enacted chapter 38, Laws of 1979, creating section 40.91, Stats. (1979-80), which reduced these judges' salaries by the amount of retirement benefits each receives from the Milwaukee County Employes Retirement System. The plaintiffs sued, prevailing in the trial court. The court of appeals reversed and the supreme court accepted a petition for review.
The supreme court began its analysis by noting that plaintiffs had a contract with the Milwaukee County Employes Retirement System. It then looked to determine whether or not an obligation of contract was impaired and held:
 Thus Chapter 38 effectively, albeit indirectly, deprives the plaintiffs of the benefits properly due them under their MCERS contracts. We would be putting form over substance if we held *Page 109 
that only a direct reduction in pension benefits constitutes an impairment. Accordingly, we conclude that the obligations of the plaintiffs' MCERS contracts are impaired by the salary setoff device of Chapter 38, Laws of 1979
Cannon, 111 Wis.2d at 557.
The supreme court then turned to the question of whether the impairment is constitutional.
 The degree of impairment determines the level of scrutiny to which the legislation in question will be subjected. In Allied Structural Steel Co. v. Spannaus, 438 U.S. at 244-45, the court stated:
 "[T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." (Footnotes omitted.)
 In finding that an impairment was severe, the Spannaus
court relied upon those "factors that reflect the high value the Framers placed on the protection of private contracts." Id. at 245. In particular, the court noted that the legislation in question nullified an express term of the contract which was bargained for and reasonably relied upon by the parties, resulting in a completely unexpected liability to the plaintiff 111 Wis.2d at 544, 558.
As noted earlier, the supreme court held that the contract clause does not absolutely proscribe the passage of laws which impair the obligation of contracts.
In Home Building Loan Assn. v. Blaisdell, 290 U.S. 398, the United States Supreme Court indicated that a law impairing contracts will survive the contract clause if
 1) An emergency[4] exists which furnishes a proper occasion for the exercise of the state's reserved power to protect the vital *Page 110 
interests of the community or to remedy a broad and general social or economic problem.
 2) The law is addressed to a legitimate end, the protection of a basis societal interest, and not to the advantage of particular individuals.
 3) The relief afforded by the impairing statute must be of a character suitable to the occasion necessitating exercise of the state's reserved power and should be granted upon reasonable terms and conditions which are appropriate to the public purpose requiring adoption of such a statute.
Using the same standards as the United States Supreme Court inSpannaus, the court deemed the impairment in Cannon to be severe. Then, applying the standards from Blaisdell, (cited herein), our supreme court held:
 [T]he retroactive application of Chapter 38 will do little to protect the broad societal interests articulated in the legislative purpose. The marginal protection offered by Chapter 38, coupled with its severe impairment of the plaintiffs' MCERS contracts. indicates that it is neither reasonable nor of a character appropriate to the public purpose it was designed to meet.
Cannon, 111 Wis.2d at 562.
I now turn to the question of whether the contracts between those people who were members of the retirement systems referred to in section 71.03 (2)(d) on December 30, 1963, and who are still working for the units of government therein listed, will be impaired by the proposed legislation.
Again, I must divide that particular class of persons into two sub-classes — first, those who by virtue of chapter 96, Laws of 1981, are members of the Wisconsin Retirement System (former members of the Milwaukee public school teacher's annuity and retirement fund and Wisconsin state teachers retirement system); and, secondly, the remainder.
As to the first group, section 40.19 (1), as created by chapter 96, Laws of 1981, and effective January 1, 1982, applies. The Legislature clearly stated its intent:
 Rights exercised and benefits accrued to an employe under this chapter for service rendered shall be due as a contractual right and shall not be abrogated by any subsequent legislative act. The *Page 111 
right of the state to amend or repeal, by enactment of statutory changes, all or any part of this chapter at any time, however, is reserved by the state and there shall be no right to further accrual of benefits nor to future exercise of rights for service rendered after the effective date of any amendment or repeal deleting the statutory authorization for the benefits or rights. . . .
Therefore, if a member of the first subset retires after March 8, 1984, to the extent that his or her pension is attributable to post-March 8, 1984 earnings, that aliquot portion will be subject to tax. The pre-March 9, 1984 portion will remain tax-exempt. This result occurs because of the specific reservation by the Legislature of its right to prospectively amend or repeal the statute, provided it does not abrogate any rights or benefits accrued to a member.
It is important to note that section 43 of chapter 96, Laws of 1981, repealed and recreated section 71.03 (2)(d). The only change made was to include the public employe trust fund as the successor to the Milwaukee public school teacher's annuity and benefit fund, and to the Wisconsin state teachers retirement system. The tax exemption remained intact and unaltered for the remainder of the persons described in section 71.03 (2)(d). When the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws, including statutes. Mack v. JointSchool District No. 3, 92 Wis.2d 476, 489, 285 N.W.2d 604
(1979). Further, "a statute must be presumed to be valid and constitutional, 2 Sutherland Statutory Construction (3rd ed.) pp. 326-27, sec. 4509 . . ." In re City of Beloit, 37 Wis.2d 637,643, 155 N.W.2d 633 (1968). The obvious implication of the grandfathering of the December 31, 1963, system members by the language contained in section 4 of chapter 267, Laws of 1963, and the reiteration of that exception in chapter 96, Laws of 1981, is that the Legislature, in order to pass a constitutional statute which would not impair contract obligations, had a prospective outlook. Retired and present employes were grandfathered; future employes (after January 1, 1964) would receive taxable pensions upon retirement.
It is my opinion that the remainder of the class (those persons mentioned in section 71.03 (2)(d) other than former members of the Milwaukee and state teacher retirement systems) in all likelihood will be entitled to receive tax-exempt pensions upon their retirement. In other words, the likely effect of the proposed legislation is to unconstitutionally impair their obligations of contract. This is *Page 112 
not to say, however, that these pensions remain irrevocably tax-exempt; only that the standards from Spannaus, Blaisdell andCannon are not met by the proposed legislation. If subsequent legislation meets those standards, then the impairment may well be constitutional.
In rendering this opinion, I became aware of an Ohio Supreme Court case, Herrick v. Lindley, 59 Ohio St.2d 22, 391 N.E.2d 729
(1979). In that matter, the Ohio Supreme Court held that retirement pensions could be later taxed even though the recipients had retired at a time when Ohio law provided that such pensions were tax free. This case is distinguishable from the question before me in several important respects.
First, the Ohio case was submitted for the plaintiffs on a theory of vested rights. They argued that the vesting statute, when read together with the exemption statute, results in the pensioners having a vested right to a continuing tax exemption. In this case, however, the issue is not one of statutory construction. Rather, it is a question of determining the scope of a contract, and of determining whether or not impairment of that contract by taxation is constitutional. Of course, the right of contract must yield to the police power when the safeguarding of the vital interests of the people so dictates. Thus, a Wisconsin court would be faced with a balancing test to decide whether or not Impairment is constitutionally permitted. The Ohio court only had a "yes-no" choice.
Secondly, the Ohio Supreme Court would have had to approve of the appellate court's use of statutory construction to allow the continuing exemption. The Ohio Supreme Court dismissed this contention: "A right to tax exemption must appear with reasonable certainty in the language of a statute, and may not depend on a doubtful construction of that language." Herrick,391 N.E.2d at 733. In this case, resort to statutory construction is unnecessary.
Finally, the Ohio Supreme Court viewed the tax exemption as irrevocable if plaintiffs were to have prevailed. Thus, the state partially relinquishes its ability to deal with changing future fiscal conditions. "The power to tax being a fundamental governmental power, its impairment should not be based on a debatable construction of statutory construction." Herrick,391 N.E.2d at 733. In Wisconsin, the retirement benefits could be taxed (i.e., the contract obligations could be impaired) if the public interest and needs of *Page 113 
the state outweigh the high value placed on the protection of private contracts.
Finally, I emphasize that this opinion is based on proposed legislation as it appeared on June 3, 1985. Subsequent amendments or declarations of legislative and public policy in connection with this legislation may well produce a different answer in the future.
BCL:DJS
[1] Section 1276m, Assembly Amendment 1 to 1985 Assembly Bill 85 adds the following language at the conclusion of section 71.03
(2)(d): "but such exemption shall not exclude from gross income tax sheltered annuity benefits. The exemption under this paragraph does not apply to benefits received by individuals who retire on or after March 9, 1984."
[2] Section 925-xx of the statutes was renumbered section 4255 by section 310, chapter 242, Laws or 1921, effective January 1, 1922.
[3] Section 42.55 was renumbered section 38.24 by section 27. chapter 213, Laws of 1941, effective June 11, 1941.
[4] The public purpose no longer need involve an emergency or temporary situation. Energy Resources Group, Inc. v. Kansas Powerand Light Co., 459 U.S. 400, 412 (1983).