Peter CHAPPY d/b/a Chappy Electric Company
and Bituminous Insurance Companies,
Plaintiffs-Appellants-Petitioners,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Department of Industry, Labor & Human
Relations of the State of Wisconsin, and
Louise Chappy, Defendants-Respondents.

Supreme Court

*No. 84–2320. Argued January 6, 1987.—Decided March 6, 1987.*

(Also reported in 401 N.W.2d 568.)

For the plaintiffs-appellants-petitioners there was a brief filed by *Robert H. Zilske, William R. Sachse, Jr., M. Christine Cowles* and *Borgelt, Powell, Peterson &*

*Frauen, S.C.*, Milwaukee, and oral argument by *Robert H. Zilske.*

For the defendants-respondents the cause was argued by *Bruce Olsen*, assistant attorney general.

WILLIAM G. CALLOW, J.    This is a review of a published decision of the court of appeals, *Chappy v. LIRC*, 128 Wis. 2d 318, 381 N.W.2d 552 (Ct. App. 1985), affirming a judgment of Washington county circuit court, Judge James B. Schwalbach. The circuit court affirmed an order of the Labor and Industry Review Commission which affirmed the hearing examiner's award of increased temporary total disability benefits to Louise Chappy, pursuant to sec. 102.43(7)(b), Stats. (1979–80). [All references in this opinion are to the 1979–80 statutes unless otherwise indicated.]

There are two issues raised on appeal. First, does sec. 102.43(7)(b), Stats., operate to modify the benefits of those employees suffering a renewed period of temporary total disability stemming from an injury incurred prior to the enactment of sec. 102.43(7)(b)? Second, if sec. 102.43(7)(b) does operate to modify the injured employee's benefits, and hence the insurer's obligation, is it unconstitutional because (a) it violates the contract clause of either the Wisconsin Constitution or the United States Constitution; or (b) it violates the fifth amendment of the United States Constitution, as applied to the states via the fourteenth amendment, in that it deprives Bituminous Insurance Companies of property without due process of the law? We agree with the lower courts' determinations that sec. 102.43(7)(b) was intended to, and does, operate to modify the benefits of those employees suffering a renewed period of temporary total disability, regard-

less of whether the original injury occurred prior to, or after, the enactment of sec. 102.43(7)(b). Furthermore, we agree with the lower courts' conclusions that sec. 102.43(7)(b) is constitutional.

On February 27, 1967, Louise Chappy (Chappy) slipped and fractured her left hip while working for Peter Chappy d/b/a Chappy Electric Company. As a consequence of her broken hip, Chappy received temporary total disability (TTD) benefits of $39.20 per week. Such benefits were equal to 70 percent of her average weekly wage and were approximately 57 percent of the maximum TTD rate of $68 per week. Chappy returned to work on October 15, 1968.

Beginning on October 4, 1980, Chappy developed knee problems related to her 1967 hip fracture. The problem with her knee resulted in a renewed period of TTD which incapacitated Chappy from October 4, 1980, through March 12, 1981. During this time Chappy Electric's insurer, Bituminous Insurance Companies, paid Chappy TTD benefits of $83.34 per week, two-thirds of her average weekly wage of $125.[1] The maximum TTD rate in effect at the time of Chappy's knee problems was $233 per week.

At the time that Chappy fractured her hip, sec. 102.03(4), Stats. (1967), provided that benefits were to be determined based upon the laws in effect at the time of the injury. However, after Chappy's original injury but prior to her knee problems, the legislature amended sec. 102.03(4) in 1977 to provide that benefits were to be determined based on laws in effect at the time of injury, except as provided in sec. 102.43(7).

[1] The record does not show how the two-thirds rate was determined. However, there is some indication that this rate was reached by applying the 1980 rate for new injuries.

Under sec. 102.43(7)(b) an employee who has a renewed period of TTD more than two years after the date of injury and such new period of TTD entitles the employee to less than the maximum weekly benefit rate, payable at the instant of the renewed injury, then the employee would receive benefits in the following manner: "[T]he employe shall receive the same proportion of the maximum which is in effect at the time of the commencement of the renewed period as the employe's actual rate at time of injury bore to the maximum rate in effect at that time."

On April 13, 1982, the Department of Industry, Labor and Human Relations (DILHR), on its own initiative, wrote and directed Bituminous Insurance Companies to pay TTD benefits, as a result of Chappy's knee problems, in the amount of $134.32 per week. The $134.32 figure was arrived at by taking the percentage of the maximum weekly wage benefit received by Chappy at the time of her 1967 injury (57.65 percent) and multiplying that percentage by the $233 maximum weekly wage benefit applicable in October, 1980. *See* Sec. 102.43(7)(b), Stats.

In response to Bituminous Insurance Companies' and Chappy Electric's (Bituminous) concern regarding the amount of TTD payments, DILHR scheduled a hearing on December 21, 1982. The hearing examiner rejected Bituminous's contention that sec. 102.43(7)(b), Stats., could not be applied retroactively. According to the examiner, sec. 102.43(7)(b) could be applied retroactively because (1) it is remedial legislation, and (2) sec. 102.03(4) explicitly provided that sec. 102.43(7)(b) is to be applied retroactively. The examiner, citing lack of jurisdiction, declined to rule on Bituminous's constitutional argument. Following the filing of a petition for review, the Labor and Industry

Review Commission (LIRC) summarily affirmed the examiner's findings of fact and order.

Bituminous sought judicial review of LIRC's decision in the circuit court for Washington county, claiming that sec. 102.43(7)(b), Stats., was unconstitutional.[2] The circuit court, using the same reasoning relied upon by the examiner, affirmed LIRC's order that the statute could be applied retroactively. The circuit court rejected Bituminous's constitutional argument. Although the court noted that the result reached in the case appeared absurd, it further noted that such a result was due to the failure of the legislature to place a cap on the benefits paid under sec. 102.43(7)(b).

The court of appeals affirmed the circuit court, rejecting Bituminous's arguments that (1) LIRC improperly applied the relevant statute retroactively, and (2) the retroactive application unconstitutionally impaired its contract rights and violated due process. The court of appeals held that, because the statute was remedial and because the statute reflected a legislative intent that it be applied retroactively, the statute was thus to be applied retroactively. The court

---

[2]Section 102.43(7)(b), Stats. (1979–80), provides in pertinent part:

"(7) If an employe has a renewed period of temporary total disability commencing more than 2 years after the date of injury, payment of compensation for the new period of disability shall be made as follows:

". . .

"(b) If the employe was entitled to less than the maximum rate, the employe shall receive the same proportion of the maximum which is in effect at the time of the commencement of the renewed period as the employe's actual rate at time of injury bore to the maximum rate in effect at that time."

of appeals then went on to state that, even if the retroactive application of sec. 102.43(7)(b), Stats., resulted in an impairment of Bituminous's contract obligations, the statute was nevertheless constitutional. The court based its decision on the fact that the constitutional proscription against impairment of contracts is not absolute and that the contract clause cannot be read literally to prohibit any impairment of contract. *Chappy*, 128 Wis. 2d at 325–30.

Finally, the court of appeals rejected Bituminous's argument that, because the statute arbitrarily changed the remedy of an injured worker, the statute deprived Bituminous of property without due process of law. The court rejected this last argument because it found that sec. 102.43(7)(b), Stats., used a rational means to achieve a legitimate end (providing prompt relief to injured employees regardless of fault and allocating the financial burden to the most appropriate source—the employer and, ultimately, the consumer).

LIRC claims that Bituminous lacks standing to challenge the constitutionality of sec. 102.43(7)(b), Stats. LIRC argues that, under *Speelmon Elevated Tank Service v. Industrial Commission*, 2 Wis. 2d 181, 185, 85 N.W.2d 834 (1957), Bituminous is precluded from questioning the constitutionality of sec. 102.43(7)(b). In *Speelmon*, the appellants were precluded from challenging the constitutionality of a statutory section because they had voluntarily proceeded under it and accepted the benefits thereof. According to LIRC, Bituminous's voluntary payment of compensation to Chappy constitutes accepting the benefits of the statute, and thus Bituminous should be prohibited from challenging the section's constitutionality. We find no merit to this claim.

It is true that one who voluntarily proceeds under a statutory section and thereby accepts the benefits of that statutory section may not question the constitutionality of that section. *Speelmon*, 2 Wis. 2d at 185. However, Bituminous has not proceeded under the statutory section it now challenges [sec. 102.43(7)(b)] and has not accepted the benefits thereof.[3] Bituminous's payment of compensation similar to the rates provided in sec. 102.43(1), Stats., constitutes neither proceeding under, nor accepting the benefits of, sec. 102.43(7)(b), Stats. Although Bituminous operates under the Worker's Compensation Act as a whole, that fact alone does not prohibit Bituminous from challenging the constitutionality of a particular section of the Act. *See Wendlandt v. Industrial Commission*, 256 Wis. 62, 39 N.W.2d 854 (1949). We therefore conclude that Bituminous is not prohibited from challenging the constitutionality of sec. 102.43(7)(b).

We next turn to the question of whether sec. 102.43(7)(b), Stats., operates to retroactively alter the benefits of those employees suffering a renewed period of TTD stemming from an injury incurred prior to the enactment of sec. 102.43(7)(b). We recognize that, if sec. 102.43(7)(b) authorizes compensation to an employee for a renewed period of TTD at rates different from that authorized at the time of the original injury,

---

[3]Under *Speelmon Elevated Tank Service v. Industrial Commission*, 2 Wis. 2d 181, 85 N.W.2d 834 (1957), if there had been another employee facing the same situation as Chappy, Bituminous could not pay that employee benefits under sec. 102.43(7)(b), Stats., and then later argue that it was not liable to Chappy because sec. 102.43(7)(b) was unconstitutional. But that is not the situation in this case.

sec. 102.43(7)(b) operates retroactively.[4] Thus our analysis looks to whether the legislature, in enacting sec. 102.43(7)(b), intended such a retroactive operation.

Our determination of this issue involves the construction of a statute in relation to a particular set of facts and is thus a question of law. *State v. Nordness*, 128 Wis. 2d 15, 24, 381 N.W.2d 300 (1986). Accordingly, we need not defer to the decisions of the lower courts. *Id.* However, " 'this court does defer to a certain extent' to the interpretation and application of the statute by the enforcing agency." *Pigeon v. ILHR Department*, 109 Wis. 2d 519, 525, 326 N.W.2d 752 (1982). Thus, "as to questions of law, we will not reverse a determination made by the enforcing agency where such interpretation is one among several reasonable interpretations that can be made, equally consistent with the purpose of the statute." *De Leeuw v. ILHR Department*, 71 Wis. 2d 446, 449, 238 N.W.2d 706 (1976).

The general rule in Wisconsin is that "legislation is presumed to be prospective unless the statutory language clearly reveals by express language or necessary implication an intent that it apply retroactively." *State v. ILHR Department*, 101 Wis. 2d 396,

---

[4]Although sec. 102.43(7)(b), Stats., would not be retroactive in the sense that it causes Bituminous to pay Chappy additional total temporary disability (TTD) for the 1967 benefit period, sec. 102.43(7)(b) would be retroactive in that it alters Bituminous's contractual obligations stemming from any pre-1977 injuries. Instead of Bituminous being obligated to cover the TTD benefits from the hip injury and any renewed period of TTD at the rate in effect on the date of the hip injury, Bituminous is now obligated to pay TTD benefits for any renewed period of TTD at whatever rate is in effect at the time of the renewed period of TTD.

403, 304 N.W.2d 758 (1981). In the present case it is necessary to construe sec. 102.43(7)(b), Stats., in conjunction with sec. 102.03(4), Stats., to determine whether sec. 102.43(7)(b) was intended to operate retroactively. We conclude that the language of sec. 102.03(4) evidences a legislative intent to have sec. 102.43(7)(b) apply retroactively to increase the benefits of those employees suffering a renewed period of TTD stemming from an injury incurred prior to the enactment of sec. 102.43(7)(b).

Prior to the enactment of sec. 102.43(7)(b), Stats., sec. 102.03(4), Stats., provided that "[t]he right to compensation and the amount ... shall ... be determined in accordance with the provisions of law in effect as of the date of the injury." Thus an employee suffering a renewed period of TTD received compensation based on the rate in effect at the time of the injury. In 1977 the legislature enacted sec. 102.43(8) [now sec. 102.43(7)] to provide that an employee who suffered a renewed period of TTD would receive an adjustment to his or her compensation. *See* Chapter 195, Laws of 1977. At the same time that the legislature enacted sec. 102.43(8), the legislature amended sec. 102.03(4) to provide that "[t]he right to compensation and the amount ... shall ... be determined in accordance with the provisions of law in effect as of the date of the injury *except as to employes whose rate of compensation is changed as provided in ss. ... 102.43(8)*."[5] Chapter 272, Laws of 1977 (emphasis

---

[5]The exception added to sec. 102.03(4), Stats., originally stated: "except as to employes whose rate of compensation is changed as provided in [sec.] 102.43(1)." Chapter 195, Laws of 1977. This section was later amended to provide: "except as to employes whose rate of compensation is changed as provided in ss. 102.43 ... (8)." Chapter 272, Laws of 1977. This latter amendment was

added). We conclude that the language "except as to employes whose rate of compensation is changed as provided in [sec. 102.43(7)]" was added to provide an adjustment for inflation for those employees who were injured prior to the enactment of sec. 102.43(7) and reflects the legislature's recognition that the compensation benefits must increase to maintain parity with the real value of benefits available at the time of the original injury.

Our conclusion that this language was added to provide benefits for those suffering a renewed period of TTD stemming from an injury incurred prior to the enactment of sec. 102.43(7)(b), Stats., is illustrated by looking at a hypothetical to see the effect of sec. 102.43(7)(b) without the amendment to sec. 102.03(4). We assume, for the purposes of this hypothetical, that the original injury occurred after the enactment of sec. 102.43(7)(b) and that sec. 102.03(4) provided that compensation was to be based on the laws in effect at the time of injury. In such a situation, an employee suffering an injury (TTD) in year one would receive compensation based on the rates for TTD in effect as of the date of injury. If that same employee suffers a renewed period of TTD in year four, then that employee would receive compensation based on the same proportion of the maximum which is in effect in

adopted to reflect the fact that sec. 102.43(8) was originally numbered 102.43(1) and that, when it was renumbered to 102.43(8), no change was made in the reference in sec. 102.03(4) to sec. 102.43(1).

Section 102.43(8), Stats., was subsequently renumbered and currently appears as sec. 102.43(7). In this opinion it will be referred to as sec. 102.43(7).

year four as the employee's rate in year one bore to the maximum rate in effect in year one.

This result is reached by first looking at sec. 102.03(4), Stats. Under sec. 102.03(4), without the amendment, compensation is based on the "provisions of the law in effect as of the date of the injury." Since sec. 102.43(7)(b), at the time of the injury (year one), provided that renewed periods of TTD were to be compensated based on the rates in effect at the time of the renewed period, compensation would properly be based on the rates in effect in year four. Thus we find that the added language "except ... as provided in [sec. 102.43(7)(b)]" is not necessary to provide an adjustment for inflation for those employees injured after the enactment of sec. 102.43(7)(b). Because a statute should not be construed so that a part of it is rendered superfluous by the construction given, *State ex rel. Knudsen v. Board of Education*, 43 Wis. 2d 58, 65, 168 N.W.2d 295 (1969), we conclude that the amendment to sec. 102.03(4) was added to provide that sec. 102.43(7)(b) was to apply to those employees suffering a renewed period of TTD stemming from an injury incurred prior to the enactment of sec. 102.43(7)(b).

Our conclusion that sec. 102.43(7)(b), Stats., is to be applied retroactively is further supported by the fiscal estimate written when sec. 102.43(7) was proposed. The fiscal estimate provides that sec. 102.43(7) would increase costs to the local government by approximately $7,200 in the two years following adoption of sec. 102.43(7).[6] In light of the fact that sec.

[6]The fiscal estimate accompanying the bill which contained sec. 102.43(7), Stats., indicated that the cost to local government would be approximately $7,200 over the initial two years. This

102.43(7) only applies where there has been a renewed period of TTD more than *two years after* the date of the injury, there would have been no fiscal impact in the first two years if the legislature had intended only a prospective application. Thus the legislature must have intended that sec. 102.43(7) apply retroactively to those employees suffering a renewed period of TTD stemming from an injury incurred prior to the enactment of sec. 102.43(7).

Having determined that sec. 102.43(7)(b), Stats., applies retroactively, we now turn to the question of whether its retroactive operation renders sec. 102.43(7)(b) unconstitutional. In determining whether sec. 102.43(7)(b) is constitutional, the lower courts' findings of evidentiary or historical facts will be upheld unless they are clearly erroneous. *See State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984), *rev'd on other grounds,* 794 F.2d 293 (7th Cir. 1986). However, the lower courts' holdings that sec. 102.43(7)(b) is constitutional is a question of law, and thus we do not give deference to the lower courts' decisions. *See State v. Ludwig,* 124 Wis. 2d 600, 607, 369 N.W.2d 722 (1985).

Furthermore, in reviewing the constitutionality of sec. 102.43(7)(b), Stats., we recognize there is a strong presumption that a legislative enactment is constitutional. *State v. Cissell,* 127 Wis. 2d 205, 214, 378 N.W.2d 691 (1985). This court has often explained that the party challenging the statute carries a heavy burden of persuasion. It is not sufficient that the

estimate indicates that sec. 102.43(7)(b) will have only a modest effect on insurers. The legislature limits fiscal note estimates to the costs to governmental entities.

challenger show that there is doubt as to the act's constitutionality. The challenger of a statute must prove beyond a reasonable doubt that the act is unconstitutional. *County of Portage v. Steinpreis*, 104 Wis. 2d 466, 478, 312 N.W.2d 731 (1981).

In analyzing a statute's constitutionality, "[e]very presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973). Thus "[i]f there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court." *State ex rel. Carnation Milk Products Co. v. Emery*, 178 Wis. 147, 160, 189 N.W. 564 (1922); *State v. Interstate Blood Bank, Inc.*, 65 Wis. 2d 482, 489, 222 N.W.2d 912 (1974).

With this in mind, we now turn to the question of whether sec. 102.43(7)(b), Stats., unconstitutionally impairs the obligation of contract in violation of Article I, Section 10 of the United States Constitution[7]

---

[7]Article I, Section 10 of the United States Constitution provides in part: "No state shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make any thing but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility."

or Article I, Section 12 of the Wisconsin Constitution.[8] In analyzing the contract clause of the United States Constitution, we are bound by the interpretation which the United States Supreme Court has given that provision. *State v. Johnson*, 133 Wis. 2d 207, 216, 395 N.W.2d 176 (1986). Although we are not bound to interpret the contract clause of the Wisconsin Constitution coextensively with the contract clause of the United States Constitution, our prior decisions have relied upon the decisions of the United States Supreme Court. *See State ex rel. Cannon v. Moran*, 111 Wis. 2d 544, 331 N.W.2d 369 (1983); *State ex rel. Building Owners v. Adamany*, 64 Wis. 2d 280, 219 N.W.2d 274 (1974).

Although the language of the contract clause appears to be absolute, "[n]o state shall ... pass any ... law impairing the obligation of contracts," the United States Supreme Court has repeatedly held that the prohibition of the contract clause must be accommodated to the inherent police power of the state. *E.g., Energy Reserves Group v. Kansas Power & Light*, 459 U.S. 400, 410 (1983); *Exxon Corp. v. Eagerton*, 462 U.S. 176, 190 (1983); *Cannon*, 111 Wis. 2d at 554; *Adamany*, 64 Wis. 2d at 292. In *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978), *reh'g. denied*, 439 U.S. 886, the Court stated: "'It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for

---

[8]Article I, Section 12 of the Wisconsin Constitution provides in part: "*Attainder; ex post facto; contracts.* Section 12. No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed."

the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power ... is known as the police power ... and is paramount to any rights under contracts between individuals.'" [Quoting *Manigault v. Springs*, 199 U.S. 473, 480 (1905).] However, the *Spannaus* court recognized that the contract clause "must be understood to impose *some* limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power." 438 U.S. at 242 (emphasis in original).

The court, in trying to balance the proscription of the contract clause with the police powers of the state, has developed a multipart test for analyzing a contract clause challenge. The first step is to inquire whether the challenged statute has "operated as a substantial impairment of a contractual relationship." *Spannaus*, 438 U.S. at 244; *Energy Reserves*, 459 U.S. at 411. In determining the extent of the impairment, a court should look to the reasonableness of the parties' reliance upon the contract affected. Important to this determination is a consideration of whether the industry affected has been regulated in the past, whether the legislation nullified a basic term of the contract, and the potential liability imposed as a result of the challenged legislation. *Spannaus*, 438 U.S. at 242–47. The severity of the impairment is then used to measure the thoroughness of the scrutiny to which the legislation is subjected. *Energy Reserves*, 459 U.S. at 411. Thus the greater the severity, the higher the hurdle the legislation must clear.

If the legislation constitutes a substantial impairment, there must exist a significant and legitimate public purpose behind the legislation. *Id.* at 411.

Although the public purpose need no longer address an emergency or temporary situation, it should be directed towards remedying a broad and general social or economic problem. *Id.* at 412. However, the requirement that there exist a significant and legitimate public interest arises only where there exists a substantial impairment. If the impairment is less than substantial, a diminished degree of scrutiny is required.[9]

Finally, once a legitimate public purpose has been found, the inquiry is whether the challenged legislation "'[is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Spannaus*, 438 U.S. at 244. Furthermore, unless the state itself is a contracting party, the court, in reviewing economic and social legislation, should defer to the legislature's judgment as to the necessity and reasonableness of a particular measure. *Energy Reserves*, 459 U.S. at 412–13.

■ In applying the balancing test outlined above, the threshold determination is whether sec. 102.43(7)(b), Stats., substantially impairs Bituminous's contract rights. There is no doubt that sec. 102.43(7)(b) impairs Bituminous's contractual obligations in that Bituminous's contractual expectations have been altered. However, there is nothing to indicate that sec. 102.43(7)(b) has "operated as a *substantial* impair-

[9]There is some indication that, where only a minimal alteration is present, "the inquiry ends as no constitutional violation has occurred." *In Re LaFortune*, 652 F.2d 842, 846 (9th Cir. 1981); *See also Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245 (1978), *reh'g. denied*, 439 U.S. 886 (minimal alteration of contractual obligations may end the inquiry at its first stage).

ment." Bituminous has not provided any information as to the actual cost it will incur or the cost to any worker's compensation insurer if liability for increased payments exists. At oral argument, Bituminous stated that it was impossible to estimate the precise cost involved. However, even if the total costs could not be specifically determined, Bituminous has an obligation to show prejudice by offering some estimates of significant anticipated costs.[10] It is not enough for Bituminous merely to show that it could not seek a rate review to recover the TTD benefits paid to Chappy. Any impairment from the additional payment of $1,155.77 to Chappy is de minimis. Absent any showing or indication of the costs involved for potential, similar claims, it would be pure speculation for this court to hold that Bituminous's contract rights were substantially impaired. We therefore conclude that Bituminous has not met its burden of proving that sec. 102.43(7)(b) substantially impairs its contract rights. The absence of a substantial impairment of Bituminous's contract rights thus lowers the hurdle that sec. 102.43(7)(b) must clear to be found constitutional.

Although sec. 102.43(7)(b), Stats., does not have to be based upon a significant and legitimate public purpose to survive challenge in this case, we conclude that sec. 102.43(7)(b) passes such a heightened test. It is clear that sec. 102.43(7)(b) was enacted to ameliorate the effects of inflation on those employees who suffer a renewed period of TTD.[11] Although the rate of infla-

[10]See supra n. 6.

[11]The need for such a legislative enactment is highlighted by the facts of this case. If there was no adjustment for inflation in the present case, Louise Chappy would have been entitled to TTD

tion has slowed in recent years, we conclude that the protection of employees from the effects of inflation is a legitimate public purpose directed towards a broad and general economic problem. It has long been recognized that each and every person is affected by inflation. One need only look at the consumer price index to be reminded of the dramatic effects of inflation on one's buying power. Yet it is those who are on a fixed income, like the employees receiving worker's compensation, who are most affected by inflation. We would be remiss to hold that legislation directed at ameliorating such effects is not a legitimate public purpose, directed at a broad economic problem.

Our final inquiry is whether sec. 102.43(7)(b), Stats., is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the adoption of the legislation. As noted earlier, where the state is not a contracting party, the court should defer to the legislature's judgment as to the necessity and reasonableness of a particular measure. *Energy Reserves*, 459 U.S. at 412–13.

Under sec. 102.43(7)(b), Stats., a worker suffering a renewed period of TTD receives compensation based upon the percentage of the maximum rate the worker received at the time of the original injury. The maximum rate is adjusted to compensate for the rate of inflation according to a statutorily established formula. We see nothing unreasonable or inappropri-

payments of $39 per week. Although this amount may have been reasonable compensation for Chappy during her period of TTD in 1967, the legislative increase in the benefit scale by 1980 is substantial evidence that $39 would have been grossly inadequate at the time of her renewed TTD.

ate in such a legislative provision. The fact that Chappy will receive more income from the renewed TTD benefits than she would have received if she had been at work does not make the statute unreasonable. The legislature should be free to establish a general rule for all instances of renewed TTD even if this results in a worker occasionally receiving benefits in excess of wages, particularly when it appears that the worker is receiving exceedingly modest wages.

In summary, Bituminous has not carried its burden of proving beyond a reasonable doubt that sec. 102.43(7)(b), Stats., is unconstitutional. Because it has not carried this burden, we hold that sec. 102.43(7)(b) does not violate the contract clause of either the federal or state constitution.

We turn now to Bituminous's argument that sec. 102.43(7)(b), Stats., takes Bituminous's property without due process and, therefore, violates the fifth amendment of the United States Constitution.[12] In addressing this question, we recognize that there exists no definitive statement by the United States Supreme Court concerning whether it is the fifth amendment due process clause as applied to the states via the fourteenth amendment or the fourteenth amendment itself which prohibits a state from depriving an individual of property without due process of law. However, that issue is not before us, and we do not decide it. We address the argument in the manner in which it is presented by Bituminous.

---

[12]The fifth amendment of the United States Constitution, which applies to the states via the fourteenth amendment, provides in pertinent part: "No person shall ... be deprived of life, liberty, or property, without due process of law."

The starting point for our analysis is the United States Supreme Court's decision in *Pension Benefit Guaranty Corp. v. R. A. Gray & Co.*, 467 U.S. 717 (1984). In the *Gray* decision, the Supreme Court reaffirmed its earlier holding in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976), that "'legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.'" *Gray*, 467 U.S. at 729.

Furthermore, this strong deference is no less applicable when the challenged legislation is applied retroactively. *Id.* "[If] the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Id.* Essentially, when a retroactive statute is challenged, the due process test is met by showing "that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Id.* at 730. Because we find that the imposition of the cost of inflation on the employers and those standing in their place is justified by a rational legislative purpose, we conclude that sec. 102.43(7)(b), Stats., does not violate the due process clause of the United States Constitution.

Section 102.43(7)(b), Stats., was enacted to ameliorate the effects of inflation on those employees suffering a renewed period of temporary total disability. In recognizing that this inflationary burden fell equally on those employees injured both before and after the effective date of sec. 102.43(7)(b), the legislature pro-

vided for sec. 102.43(7)(b) to apply retrospectively as well as prospectively. As noted earlier, the mitigation of the effects of inflation is a legitimate legislative purpose. Furthermore, we find that the general scheme of imposing these costs upon the employers and those standing in their place—and, ultimately, upon the consumer—is a rational means of funding the added costs due to inflation. Moreover, not only are the means adopted rational, they are also consistent with the basic purpose of worker's compensation. *See Klein Industrial Salvage v. ILHR Dept.*, 80 Wis. 2d 457, 462, 259 N.W.2d 124 (1977) (purpose of worker's compensation is to provide prompt relief to injured employees, regardless of fault, and to allocate the financial burden to the most appropriate source—the employer and, ultimately, the consumer).

Bituminous argues that sec. 102.43(7)(b), Stats., is not rationally related to its purpose because insurers cannot always pass the added costs on to the consumer. However, it is not our place to assess the wisdom of the scheme adopted by the legislature or to scrutinize the degree to which the retrospective liability imposed can now be passed on to the consumer. *See Usery*, 428 U.S. at 18–19. As was pointed out by the Court in *Usery*, "[i]t is enough to say that the Act approaches the problem of cost spreading rationally; whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension." *Id.* at 19.

Because the parties have raised the applicability of *State ex rel. Briggs & Stratton v. Noll*, 100 Wis. 2d 650, 302 N.W.2d 487 (1981), we conclude by noting that any reliance upon *Noll* is misplaced. First, unlike *Noll*, the present case involves a de minimis impairment of Bituminous's rights. This court has never held

that a de minimis impairment raises a constitutional question, and we decline to do so in this case.

Second, we conclude that the constitutional impairment found in *Noll* does not exist in the present case. In *Noll* we held that the challenged statute was unconstitutional because it retroactively affected the employer's obligation which already had been set by law. *Id.* at 657. Our conclusion was based upon the fact that there was no opportunity for the insurer, through increased premiums, to recover for statutorily imposed increased disability payments growing out of past events. However, in the present case the challenged statute creates new obligations with respect to past transactions, only upon the occurrence of a new, prospective event. Because the triggering event under sec. 102.43(7)(b), Stats., is prospective, there exists nothing which prevents an insurer from seeking a rate increase based upon the actuarial probability that a future claim, based on a past injury, will arise. We recognize that there may exist a possibility of claims for which no rate adjustment is possible; however, such claims will in all probability, like the claim in this case, create a de minimis impairment posing no constitutional question.

*By the Court.*—The decision of the court of appeals is affirmed.