GARY I. GATES, Secretary Department of Employe Trust Funds
You request my opinion as to whether sections 436m, 684r and 688km of 1987 Wisconsin Act 27 (the 1987 budget bill) violate the contract clauses of the United States or Wisconsin Constitutions. Specifically, you ask:
 Does redirecting the investment earnings of the assets in the annuity reserve to fund supplemental benefits payable only to pre-1974 retirees violate the contractual rights of those who retired after that date?
It is my opinion that these statutory changes do not cause a constitutional infringement of the contractual rights of the Wisconsin Retirement System (WRS) annuitants who retired after 1974 and are not given the benefit of the "special performance dividend." The contractual rights of the various WRS annuitants are not uniform and are greatly determined by the content of the statutes in effect on the date the annuitants terminated public employment. Consequently, a general statement as to the constitutional rights of all annuitants under the WRS is inappropriate in answering your question.
All laws are presumed to be constitutional and one attacking a statute must, to overcome this presumption, prove the statute unconstitutional beyond a reasonable doubt. State ex rel. Cannonv. Moran, 111 Wis.2d 544, 552-53, 331 N.W.2d 369 (1983). Minimal alteration of contract rights does not constitute a constitutional impairment. Since reasonable arguments can be advanced that any alteration of the contract rights of the post-1974 annuitants was minimal, I cannot conclude that the statutory provisions in question are unconstitutional beyond a reasonable doubt.
Sections 436m, 684r and 688km of the 1987 budget bill (as vetoed in part by the Governor) state as follows: *Page 300 
SECTION 436m. 20.515 (1)(a) of the statutes is amended to read:
 20.515 (1)(a) Annuity supplements and payments. A sum sufficient to pay the benefits authorized under ss. 40.02 (17)(d)2, [1985 stats.,]* and 40.27 (1) and (1m), 1985 stats., in excess of the amounts payable under other provisions of ch. 40 and any distributions made under s. 40.04 (3) (e) after the effective date of this paragraph . . . . [revisor inserts date], notwithstanding s. 40.27 (2)
and to reimburse any amounts expended under par. (w) for the costs of administering the benefits provided under ss. 40.02 (17)(d)2, [1985 stats.]*, and 40.27 (1) and (1m), 1985 stats.
SECTION 684r. 40.04 (3)(e) of the statutes is created to read:
 40.04 (3)(e)1. As of the last day of the first full month occurring after the effective date of this subdivision . . . . [revisor inserts date], $230,000,000 shall be distributed from the transaction amortization account of the fixed retirement investment trust to the appropriate reserve of the fixed retirement investment trust as follows:
 a. The portion credited to the fixed annuity reserve shall be distributed by the board as soon as possible after the effective date of this subdivision . . . . [revisor inserts date], but with an effective date of July 1, 1987. Notwithstanding s. 40.27 (2), the board shall make the distribution as a special investment performance dividend to provide an annuity increase only to those persons currently receiving a supplemental benefit under [ss. 40.02(17)(d)2, 1985 stats.]*, and 40.27 (1) and (1m), 1985 stats. [The special investment performance dividend under this subdivision shall be equal to the supplemental annuity that an annuitant currently receives pursuant to ss. 40.02(17)(d), 1985 stats., and 40.27 (1) and (1m), 1985 stats.]* Any payment under s. 20.515 (1)(a) to annuitants receiving special investment performance dividends under this subdivision shall be reduced by the amount of the special investment performance dividends under this subdivision.
 b. The board, on recommendation of the actuary, shall provide that the portion of funds transferred from the transaction amortization account under this subdivision credited to the fixed employer accumulation reserve shall be included in the actuary's recommendation of the required employer contribution for calender *Page 301 
year 1988, as otherwise determined under s. 40.05 (2) (am). [The portion of funds transferred from the transaction amortization account under this subdivision credited to the fixed employe accumulation reserve shall be included in determining the rate of interest credited to individual employe accumulation accounts as of December 31, 1987 notwithstanding any restriction on interest credits provided by sub. (4)(a).]*
 c. The board shall make the distribution under subd. 1.a as soon as possible after the effective date of this subdivision . . . . [revisor inserts date]. Until such time as the special investment performance dividend is effective, the supplemental annuity benefit under [s]*s. [40.02 (17)(d)2, 1985 stats., and]* 40.27 (1) and (1m), 1985 stats., shall continue to be funded from money available under s. 20.515 (1)(a). After the effective date of the special investment performance dividend, the department shall provide from the portion to be credited to the fixed annuity reserve funds sufficient to reimburse the appropriation under s. 20.515 (1)(a) for supplemental benefits payments made after June 30, 1987.
 SECTION 688km. 40.27 (1) and (1m) of the statutes are repealed.
Section 40.27 (1) and (1m), Stats. (1985), repealed prospectively by budget bill section 688km, provides for payment of supplemental benefits to certain WRS annuitants who were annuitants as of September 1974. This supplemental benefit payment is presently paid from state general purpose revenues and not from WRS trust funds. See secs. 20.001 (3)(d), 20.005 (3) (reference to 20.515 (1)(a)), and 20.515 (1)(a), Stats.
The 1987 budget bill thus amends section 20.515 (1)(a) by directing that the supplemental benefits will be paid by "a special investment performance dividend." This "dividend" results from the distribution of $230,000,000 from the transaction amortization account of the WRS fixed retirement trust to each of the three reserves (employe accumulation reserve, employer accumulation reserve, and annuity reserve). Sec. 40.04 (3), (4), (5) and (6), Stats.
That portion credited to the fixed annuity reserve is denominated a "special performance dividend" and is distributed solely to those annuitants eligible for supplemental benefits under section 40.27 (1) and (1m), Stats. (1985). The amount of this "special performance dividend" is offset from the general purpose revenue appropriation *Page 302 
for supplemental benefits. See sec. 436m of the 1987 budget bill. Annuitants who commenced their annuities after September 1974 receive no benefit from the special performance dividend. The issue then is whether the effect of these budget bill changes on individual WRS participants, who do not benefit but may be disadvantaged therefrom, violate the contract clauses of the United States or Wisconsin Constitutions.
Article I, section 10, clause 1 of the United States Constitution states that "[n]o state shall . . . pass any . . . law impairing the obligation of contracts . . . ." Similarly, article I, section 12 of the Wisconsin Constitution states that "[n]o bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed . . . ."
As the court stated in Cannon, 111 Wis.2d at 554, "[t]he first step in analyzing a contract clause problem is to determine whether an obligation of contract has been impaired." A contract is impaired when the rights and obligations of the parties to that contract, which arise by virtue of that contract, are altered by legislation. Home Building Loan Association v.Blaisdell, 290 U.S. 398, 431 (1934)
The budget bill statutory changes that accelerate transfer of monies from the transaction amortization account to increase earnings credited to the annuity reserve, payable solely to supplemental benefit recipients, potentially cause detriment to non-supplemental benefit recipients in two ways. First, limiting the special performance dividend to supplemental benefit recipients precludes the remainder of the WRS annuitants from receiving an annuity increase due to the accelerated recognition of gains from the transaction amortization account. Second, in future years, all WRS annuitants could receive reduced dividend increases because later transfers from the transaction amortization account would be lower because of the present transfer of monies from that account.
Section 40.04, which controls the distribution of earnings, profits or losses of the fixed retirement investment, provides in part.
 (3) A fixed retirement investment trust and a variable retirement investment trust shall be maintained within the fund under the jurisdiction and management of the investment board for the purpose of managing the investments of the retirement reserve accounts and of any other accounts of the fund as determined by *Page 303 
the board, including the accounts of separate retirement systems. Within the fixed retirement investment trust there shall be maintained a transaction amortization account and a current income account, and any other accounts as are established by the board or the investment board. . . .
 (a) All earnings, profits or losses of the fixed retirement investment trust and the net gain or loss of the variable retirement investment trust shall be distributed annually on December 31 to each participating account in the same ratio as each account's average daily balance within the respective trust bears to the total average daily balance of all participating accounts in that trust. For the fixed retirement investment trust the amount to be distributed shall be the then balance of the current income account plus 7% of the then balance of the transaction amortization account.
. . . .
 (6) An annuity reserve shall be maintained within the fund to which shall be transferred amounts equal to the present value as of the date of commencement of annuities granted under this chapter. The reserve shall be increased by investment earnings at the effective rate
and shall be reduced by the aggregate amount of annuity payments and death benefits paid with respect to the annuities.
"Effective rate" is defined at section 40.02 (23) as:
 (a) For the fixed annuity division, the rate, . . . determined by dividing the remaining fixed annuity division investment earnings for the calendar year or part of the calendar year, after making provision for any necessary reserves and after deducting prorated interest and the administrative costs of the fixed annuity division for the year, by the fixed annuity division balance at the beginning of the calendar year as adjusted for benefit payments and refunds paid during the year excluding prorated interest.
Fixed annuity reserve surpluses are distributed under the authority of section 40.27 (2), which provides:
 (2) Fixed annuity reserve surplus distributions. Surpluses in the fixed annuity reserve established under s. 40.04 (6) and (7) shall be distributed by the board if the distribution will result in *Page 304 
at least a 2% increase in the amount of annuities in force, on recommendation of the actuary, as follows:
 (a) The distributions shall be expressed as percentage increases in the amount of the monthly annuity in force, including prior distributions of surpluses but not including any amount paid from funds other than the fixed annuity reserve fund, preceding the effective date of the distribution. The percentage increase in any calendar year may not exceed the salary index for the previous calendar year. For purposes of this subsection, annuities in force include any disability annuity suspended because the earnings limitation had been exceeded by that annuitant in that year.
 (b) Different percentages may be applied to annuities with different effective dates as may be determined to be equitable but no other distinction may be made among the various types of annuities payable from the fixed annuity reserve.
 (c) The distributions shall not be offset against any other benefit being received but shall be paid in full, nor shall any other benefit being received be reduced by the distributions. The annuity reserve surplus distributions authorized under this subsection may be revoked by the board in part or in total as to future payments upon recommendation of the actuary if a deficit occurs in the fixed annuity reserves.
Rights of the post-1974 annuitants established in section 40.27
(2) could be impaired by the budget bill amendments since the special investment performance dividend is offset against and reduces the supplemental benefit. See sec. 684r of the 1987 budget bill. To the extent that the special performance dividend is used to offset supplemental benefits, less money is available to fund fixed annuity reserve surplus dividends under section40.27 (2). The only basis given in this statutory section for a lesser benefit is revocation "by the board in part or in total as to future payments upon recommendation of the actuary if adeficit occurs in the fixed annuity reserves." See sec. 40.27
(2)(c), Stats. Do the post-1974 annuitants thus have a contractual right to the terms of section 40.27 (2) distribution of surplus that cannot constitutionally be infringed by the special performance dividend provisions of the 1987 budget bill? Although the answer to this question is not entirely free from *Page 305 
doubt, I find no indication of such contractual right in Wisconsin case law sufficient to hold the subject statute unconstitutional.
Wisconsin common law holds that participants have no vested rights to retirement benefits absent a specific statutory or contractual provision creating vested rights. State ex rel.McCarty v. Gantter, 240 Wis. 548, 555, 4 N.W.2d 153 (1942). Whatever rights are established contractually or by statute are determined as they exist at the time of retirement. State ex rel.Smith v. Annuity Pension Board, 241 Wis. 625, 629, 6 N.W.2d 676
(1942). State Teachers' Retirement Board v. Giessel,12 Wis.2d 5, 10, 106 N.W.2d 301 (1960), held that the contractual rights included the right to earnings (the teachers' retirement system was a money-purchase benefit system in 1960). Neither that case nor any later Wisconsin case negates the concept that the vested rights are fixed at retirement absent a statute giving greater or lesser rights.
Section 40.19 (1), effective January 1, 1982, appears to provide vesting during employment by stating that:
 Rights exercised and benefits accrued to an employe under this chapter for service rendered shall be due as a contractual right and shall not be abrogated by any subsequent legislative act. The right of the state to amend or repeal, by enactment of statutory changes, all or any part of this chapter at any time, however, is reserved by the state and there shall be no right to further accrual of benefits nor to future exercise of rights for service rendered after the effective date of any amendment or repeal deleting the statutory authorization for the benefits or rights. This section shall not be interpreted as preventing the state from requiring forfeiture of specific rights and benefits as a condition for receiving subsequently enacted rights and benefits of equal or greater value to the participant.
Arguably then, one of the contractual rights accrued "for service rendered" by WRS participants is the right to fixed annuity reserve surplus distributions. Section 40.19 (1) was enacted effective January 1, 1982. Ch. 96, Laws of 1981. Participants who retired since that date probably have a contractual right to annuity increases based on distribution of fixed annuity surpluses. Participants employed by WRS participating employers after January 1, 1982, and not yet retired, may also have a contractual right to future annuity increases based on "benefits accrued . . . for service rendered." That *Page 306 
contractual right would continue until abrogated by the "special performance dividend" language in the 1987 budget bill.
While section 40.19 (1) authorizes "forfeiture of specific rights and benefits" that have vested, such forfeiture must under that statute be based upon the participant "receiving subsequently enacted rights and benefits of equal or greater value." The 1987 budget bill appears to contain no quid pro quo
for those WRS participants who do not receive the special investment performance dividend so this method of requiring forfeiture of vested rights appears inapplicable.
Section 40.19 (2m) also specifically guarantees to a WRS participant, who was a participating employe during the period January 1, 1982 to March 9, 1984, the right to have his or her retirement benefit determined under the statutes in effect on his or her termination. Such section states as follows:
 Any person who is a participant in the Wisconsin retirement system before March 9, 1984, and who is not subsequently a participating employe in the Wisconsin retirement system shall continue to have the amount of, and eligibility for, the person's benefits determined in accordance with the statutes in effect on the date the person terminated as a participating employe.
Fixed annuity reserve distribution as mandated in section 40.27
(2) is an element of "benefits determined in accordance with the statutes in effect on the date the person terminated as a participating employe." Section 40.19 (1) precludes abrogation of that contractual right "by any subsequent legislative act."
Even those WRS participants who were not participating employes after January 1, 1982, and thus not covered by the vesting language of section 40.19 (1), may be held to have vested rights abrogated by the special investment performance distribution method mandated in the 1987 budget bill. Section 40.19 (3), applying to WRS participants who were not participating employes after January 1, 1982 (the date of merger of the retirement systems), limits the benefit vesting to "the statutes in effect on the date the person terminated." Such section states:
 Any person who is a participant in the Wisconsin retirement fund or a member of either the state teachers retirement system or the Milwaukee teachers retirement fund prior to January 1, 1982, and who does not subsequently become a participating *Page 307 
employe in the Wisconsin retirement system, shall continue . . . to have the amount of and eligibility for the person's benefits determined in accord with the statutes in effect on the date the person terminated as a participating employe.
The statutory benefits which vested on termination of employment prior to January 1, 1982, also included annuity improvements from distribution of annuity reserve surpluses. See secs. 41.20 (1)(a) and 42.37 (5), Stats. (1979). Statutes in effect prior to January 1, 1982, further provided that annuity reserve surplus distributions "shall not be offset against any other benefit received but shall be paid in full, nor shall any other benefit being received be reduced by any such distribution." See sec.40.70 (3), Stats. (1979). It therefore appears that pre-1982 annuitants may have vested rights to annuity increases from annuity reserve surpluses that are infringed by the special investment performance dividend portions of the 1987 budget bill. Since it appears that there exists the potential of various degrees of impairment of the vested contracts of WRS participants, I must now consider whether this impairment is unconstitutional beyond a reasonable doubt.
As the court stated in Cannon, 111 Wis.2d at 558:
 The degree of impairment determines the level of scrutiny to which the legislation in question will be subjected. In Allied Structural Steel Co. v. Spannaus, 438 U.S. at 244-45, the court stated:
 "[T]he first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship. The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." (Footnotes omitted.)
 In finding that an impairment was severe, the Spannaus
court relied upon those "factors that reflect the high value the Framers placed on the protection of private contracts." Id. at 245. In particular, the court noted that the legislation in question nullified an express term of the contract which was bargained for and reasonably relied upon by the parties, resulting in a completely unexpected liability to the plaintiff. *Page 308 
The impairment does not appear to be severe in terms of the effect on an individual retiree's benefit. You have informed my office that the special investment dividend if distributed to all annuitants, based on the present pre-budget bill statutes, would result in an annuity increase of approximately two percent. This does not appear to be a significant impairment in light of the authority of the Employe Trust Funds Board to equitably allocate the surplus distributions. That Board has specific authority to provide higher increases to annuitants who retired at earlier dates thus limiting or completely denying increases to later annuitants. Sec. 40.27 (2)(b), Stats. In Cannon the impairment, held to be severe, consisted of loss of the plaintiffs' entire benefit from the Milwaukee County Retirement System. Cannon,111 Wis.2d at 558. Contrast this with Chappy v. LIRC,136 Wis.2d 172, 188-89, 401 N.W.2d 568 (1987), in which the court held that a de minimus loss shown was not a severe loss. The Chappy court refused to speculate as to whether the loss could be shown to be severe, absent the plaintiffs' failure to satisfy their burden of showing that the contract impairment was severe. I also decline to speculate whether the facts relating to specific individual retirees would show a severe loss.
The court indicated in Cannon, 111 Wis.2d at 558, that the basis for a determination as to whether there is a "substantial impairment" is not limited to the amount of money involved but must also take into consideration whether "the legislation in question nullified an express term of the contract which was bargained for and reasonably relied upon by the parties."
As previously shown, a substantial number of the post-1974 annuitants were employed during a period during which express statutory contract terms vested in them the general right to annuity improvements based on surpluses in the fixed annuity account. In Chappy v. LIRC, 136 Wis.2d at 187, the court stated that "In determining the extent of the impairment, a court should look to the reasonableness of the parties' reliance upon the contract affected. . . . The severity of the impairment is then used to measure the thoroughness of the scrutiny to which the legislation is subjected." It appears that it was not reasonable for participants to expect a surplus in the fixed annuity reserve to be distributed as an annuity increase. The "assumed benefit rate" (of increase from investment) "used for calculating reserve transfers at time of retirement" is established by statute as a "rate of 5%." Sec. 40.02 (6), *Page 309 
Stats. The "assumed rate, " defined by statute as "the probable average effective rate expected to be earned for the fixed annuity division on a long-term basis," is set initially by statute at "a rate of 7.5%." Sec. 40.02 (7), Stats. Participants could therefore expect that the built-in 2 1/2 percent initial difference between the "assumed benefit rate" and the "assumed rate" would provide surplus monies in the annuity reserve, which would be used to increase annuities when the actual rate of return exceeded 5%. There is, however, no clear indication in the facts before me that there was substantial reliance on surplus distribution from the fixed annuity reserve. I therefore consider the impairment not to be severe and not proscribed by the constitutions.
While the subject 1987 budget bill sections thus do not have to be based upon a significant and legitimate public purpose to survive a constitutional challenge, it is my opinion that the legislation would pass such higher test. As stated in Chappy,136 Wis.2d at 187-88, that public purpose "should be directed towards remedying a broad and general social or economic problem."
There is no legislative statement of the public purpose served by creating the special performance dividend method of payment of pre-1974 supplemental benefits rather than continuing payment from general fund monies. You have, however, informed my office that the amount of money available from the "special performance dividend" would fund the supplemental benefits into perpetuity with little necessity for future general purpose revenue funds. The pre-1979 annuitants never had a vested right to continued payment of the supplements since such supplements were, as stated in section 40.27, "subject to the continuation of the [general purpose revenue] appropriation." Making these supplements permanent appears to provide a final remedy for a broad and general economic problem without subjecting the pre-1974 annuitants to the uncertainty of the biennial budget process. Present statutes allow "equitable" distribution of annuity reserve surpluses. Sec. 40.27 (2)(b), Stats. The subject budget bill amendments can be considered to be an extension of that concept and a legitimate basis for enactment.
As the Wisconsin Supreme Court stated in North Side Bank v.Gentile, 129 Wis.2d 208, 220, 385 N.W.2d 133 (1986):
 This court's review of a legislative enactment is limited in scope. All statutes are presumed to be constitutional, and the *Page 310 
party attacking a statute must prove it unconstitutional beyond a reasonable doubt. [Case cites omitted.] "The cardinal rule of statutory construction is to preserve a statute and find it constitutional if it is at all possible to do so." [Case cite omitted.] We must uphold the constitutionality of a statute if there is any reasonable basis for it.
 "[T]he task of this court in passing upon the constitutionality of laws is limited and restrained. This court does not sit as a superlegislature debating and deciding upon the relative merits of legislation. It looks for a reasonable basis upon which the legislature might have acted, and assumes that the legislature had such a purpose in mind when it enacted the law in question." [Case cite omitted.]
I therefore conclude that, given the presumption of constitutionality, section 684r of the 1987 budget bill, which limits the distribution from the special performance dividend to only those annuitants receiving a supplemental benefit, does not violate the contract clauses of the United States or Wisconsin Constitutions.
DJH:WMS
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.] *Page 311